No. 45.—Louis E. B. DeLorme, adm'r, &c. plaintiff in error, *vs.* Theodore P. Pease, defendant in error.

[1.] A *bona fide* purchaser of land under a mortgage *fi. fa.* will be protected in his title, notwithstanding any irregularity in the proceeding of the foreclosure; especially after the same has been acquiesced in for nearly thirty years.

[2.] G B M applied for letters of administration upon the estate of H H and a citation was published according to law; a *caveat* being filed by one of the creditors against the application, by the consent of G B M, letters were granted by the Court to E S R in behalf of the creditors: *Held*, that the appointment was good, and that it was not necessary that another citation should issue.

[3.] The Act of 1841, to repeal the charter of the Bank of Darien and to wind up its affairs, directed that the Bank of Darien should execute a deed of conveyance of its real estate to the Central Bank of Georgia: *Held*, that if the Statute itself did not operate a transfer of the title from one corporation to the other, that possession by the Central Bank of the real estate of the Darien Bank, would be sufficient so to connect the two as to support the Statute of Limitations. The permission to re-call a witness, is, at Common Law, always in the discretion of the Court—the Judge consulting his own convenience, in the despatch of business as well as the benefit of the parties: *Held*, therefore, that the LXXIVth Common Law Rule of practice in this State, restricting the exercise of this discretion, transcends the power of the Superior Courts, the same being limited to new matter and such as is not provided for at Common Law or by our own legislation.

Ejectment, in McIntosh Superior Court. Tried before Judge Fleming, November Term, 1855.

This action was brought by Louis E. B. DeLorme, as the

administrator, &c. of Henry Harford, dec'd, *vs.* Achilles A. DeLorme and Theodore P. Pease, for a parcel of land near Darien. Both parties claimed under Henry Harford, who died in possession of the premises. In his lifetime, he had mortgaged these premises to the Bank of Darien. After his death, in May, 1827, a *rule nisi* for foreclosure of this mortgage was granted; on 21st April, 1828, a rule absolute for foreclosure was granted.

The defendant then offered in evidence the docket book of the Court of Ordinary of McIntosh County, in which appeared the following entries:

STATE OF GEORGIA, MCINTOSH COUNTY:

DARIEN, 13th November, 1827.

George B. McKinstry applies for letters of administration on the estate and effects of Henry Harford, late of said county, deceased; I have therefore issued citation to be published in the Darien Gazette, according to law.

GEORGE T. ROGERS, CL'K C'T ORD'Y.

Caveat of the Bank of Darien being allowed, and by consent of Mr. McKinstry, letters ordered to be granted to Eben. S. Rees, in behalf of the creditors. January Term, 1828. Letters granted.     G. T. ROGERS, C. C. O.

The defendant then introduced the minute book of the said Court, in which is found the following entry:

GEORGIA, MCINTOSH COUNTY:

DARIEN, 14th January, 1828.

At a regular meeting of the Court of Ordinary, present their honors     JACOB WOOD,
ALLEN B. POWELL,
WM. A. DUNHAM.

On application of G. B. McKinstry for letters of administration on the estate of Henry Harford, deceased, caveat by E. R. Harford and A. Kimberly, President of the Bank of Darien, against G. B. McKinstry, on the estate of Henry

Harford, on calling up of this case, E. R. Harford not appearing or supporting his claim as next of kin to the intestate, and Mr. McKinstry yielding his right to the administration to the Bank of Darien, who have named E. S. Rees as their attorney,

It is Ordered, That letters of administration do issue on the estate of H. Harford, dec'd, to E. S. Rees, in behalf of the creditors, and that he give security in the sum of $15,000, and Tho's Spalding and James Troup be his security.

It is Ordered, That the following persons be appointed appraisers on the estate of Henry Harford: Messrs. G. B. McKinstry, J. Sawyer, C. G. Grandison, Tho's King and Wm. McMaster, or any three of them.

The Court then adjourned until the first Monday in February next.        ALLEN B. POWELL, J. I. C.
                W. A. DUNHAM, J. I. C.
                JACOB WOOD, J. I. C.
Attest: GEORGE T. ROGERS, C. C. O.

The defendant then offered in evidence the original bond of E. S. Rees, which was executed on the same day.

In July, 1828, this lot, with others, was sold by the Sheriff and purchased by the Bank of Darien, who rented it out and paid taxes therefor, and afterwards, in January, 1847, the Central Bank (representing the Bank of Darien) sold this land to the defendant, Pease.

A. LEFILS, a witness, stated that a suit in Equity was instituted several years ago, in 1836, by the heirs of Harford, against Bank of Darien, about same property, which after being on the docket for some time, was dismissed, but that the record of the suit is lost; that files of the Darien Gazette, in which the county officers then published, could not be had, the paper having been long ago discontinued.

A letter was then handed to him, and he was asked if he could swear to the handwriting of E. R. Harford; he replied that he could not, that he had seen him write, but could not swear that the letter handed him was in his handwriting, or

that it was the signature of E. R. Harford. He was then dismissed from the stand, and Charles Hopkins, one of the Jurors, was sworn on the part of the defendant. The letter was handed him, and he was asked if he could prove the handwriting of E. R. Harford; he said he had frequently seen him write, but could not identify the signature as his. After some conversation between the defendant's Counsel and Lefils, Lefils was again called to the stand, and the letter handed to him, and he was asked to prove the handwriting. Plaintiff's Counsel objected, upon the ground that the witness had already been examined upon that point, and dismissed from the stand, being unable to prove it. The Court over-ruled the objection, and plaintiff's Counsel excepted.

It was admitted that search had been made by the administrator and heirs of E. S. Rees, for his letters of administration, without effect; that application had been made to the Central Bank for Sheriff's deed to the Bank of Darien also, without effect.

The Court charged the Jury, that both parties claiming under Henry Harford, the case turned upon the Statute of Limitations; that the proceedings to foreclose the mortgage was irregular, and that the sale, under such foreclosure, was void, and that the purchaser thereby acquired no title; yet, that his possession under that title might, by the lapse of time, have ripened into a good title; and whether he had a good title or not, depended upon the question, whether the estate of Harford had been so represented as to enable the Statute to run; that, from the evidence before them, they might presume administration had been granted to Rees—the case in 13 *Georgia* came up to that case—that shows that Rees was appointed administrator. Was that appointment correct, Reese not having been an applicant? It was! Every presumption was in favor of the correctness of the grant of the administration; and if correct here, there is an end of this matter. That the Statute (turning over the assets of Darien Bank) would vest title of the Darien Bank in the Central Bank, when taken in connection with the fact that

we find the Central Bank in possession of the property, renting it and selling it.

The following are the errors assigned :

1st. That the Court erred in charging the Jury that the case depended on the Statute of Limitations.

2d. That the Court erred in permitting Lefils to be recalled, to prove the handwriting of E. R. Harford, when he had been previously examined directly upon that point, and dismissed from the stand.

3d. That the Court erred in charging the Jury that the evidence showed that Rees was appointed administrator.

4th. That the Court erred in charging the Jury that the appointment of Rees was right and proper, he not having been an applicant.

5th. That the Court erred in charging the Jury that the Statute turning over the assets of the Darien Bank, vested the title of the Darien Bank in the Central Bank without a deed.

Judge McDonald being a stockholder in the Bank of Darien, did not preside in this case.

Ward ; Lloyd, for plaintiff in error.

Harden, for defendant in error.

*By the Court.*—Lumpkin, J. delivering the opinion.

This is an action of ejectment, brought by the administrator of Henry Harford, to recover real estate in the town of Darien. Both parties claim under Harford. It is not necessary, therefore, to go back of him to deduce title on either side.

The plaintiff claims as administrator, and the proof is, *prima facie*, sufficient to entitle him to recover. The defendant, on the other hand, says that this property was sold, as far back as 1827, as the property of H. Harford, the plaintiff's intestate, and bought by the Bank of Darien, at Sheriff's sale,

under a mortgage foreclosure; was taken possession of by the Bank of Darien, at the time of sale; transferred by that bank, or rather by an Act of the Legislature, to the Central Bank, as the agent of the State, for winding up the affairs of the Darien Bank, and sold by Col. Thomas, the director, to T. P. Pease, the defendant in ejectment; consequently, the defendant relies, both on his paper title and his statutory title, to protect him against the action.

[1.] The plaintiff replies, that the proceeding of foreclosure, under which the lot was sold, was absolutely void; and could, therefore, afford the defendant no protection. His Honor, the presiding Judge, sustained the plaintiff, so far as to decide, that the proceeding of foreclosure was so irregular, as that the sale under it did not amount to a perfect conveyance, to pass the title. He, nevertheless, held that it was good, as color of title, to support the statutory possession.

The irregularities complained of are two-fold: First, that twelve months did not elapse between the rule *nisi* and the rule absolute; and in the second place, that the proceedings to foreclose the mortgage, were instituted against the legal representatives of Henry Harford, and before administration was granted upon his estate.

Concede all this to be true, could the judgment of foreclosure, awarded by a Court of acknowledged jurisdiction, be attacked in this collateral way? We apprehend not. Much less can the validity of the sale under the judgment of foreclosure, be impeached on account of these alleged errors. If judicial sales could be thus impeached, it would overturn more than one half of the titles to property in this country.

If there was error then, in this branch of the case, and we are inclined to think there was, it was not against the plaintiff, but against the other side, in ruling that the judicial sale was void, and that the purchaser acquired no title, by reason of the irregularities in the proceedings to foreclose the mortgage. That possession of the premises under this sale, was sufficient to support a statutory title, there can be no doubt,

provided the estate of Henry Harford was so represented as to enable the Statute of Limitations to run.

[2.] And why was Rees not the administrator? The record shows, that application was regularly made for letters, citation published; and that the heirs and creditors were all represented; that by consent, letters were granted to Reese; that he gave the bond required by the Court; and that let-- letters did actually issue. Was there any want of jurisdiction in the Court, either as to the person or subject-matter? Will not all things be presumed to have been legally done,. especially after the lapse of so many years? But it is said the proceedings themselves prove the contrary, or rebut the presumption. It is objected that the appointee was not an applicant for the office. Is this a violation of the law? And are the letters, on that account, void?

We admit that the practice of appointing a different person at the hearing from the applicant, is not in compliance with the letter of the Act of 1799. (*Cobb*, 311.) And moreover, there are strong objections against it. (12 *Ga. R.* 526, 527.) Still, we do not feel at liberty to change a construction which has uniformly and universally prevailed over the State for more than a half century. And least of all, in this case, where the record shows that all the contestants for the administration were before the Court of Ordinary. The citation issued in the name of George B. McKinstry. The Bank of Darien was a caveator through Eben. S. Rees, its president, who, by consent of McKinstry, received the appointment. Wherefore the necessity to have another citation issue?

Harford died prior to 1828. In January of that year, letters were granted to Rees upon his estate. It is probable, from the proof, that the heirs of Harford were of age at that time. In 1836, they filed a bill against the Bank of Darien about this same property. It is late in the day, to say the least of it, to seek to recover property which, more than a quarter of a century ago, was sold, and the proceeds applied to the payment of the debts of their ancestor. More espe-

·cially when it further appears that this property has been subsequently sold by the Central Bank as the agent of the State, and the money appropriated to the *judgment creditors* of the Darien Bank!

[3.] But it is complained that no conveyance was executed by the Darien to the Central Bank to this property, as required by the Act of 1841. (*Cobb*, 139.) What of that? What if the Statute, itself, does not operate to transfer the legal title, without a deed, it shows this conclusively, that the Central Bank was in under the Darien Bank. The Act, itself, establishes that they held in privity, and that the Central went into possession under the Darien Bank. The evidence shows that the Central Bank took possession of the premises as a part of the assets of the Darien Bank. The deed from Thomas, the director, to Pease, recites a conveyance from the Bank of Darien, pursuant to the Statute; and that the property conveyed by the Central Bank to Pease, was " part and parcel of the land formerly owned by the Darien Bank." But whether this conveyance was executed or not, was wholly immaterial, so far as the plea of the Statute was concerned.

[4.] Finally, was the recalling of the witness, Armand Lefils, justifiable? The course pursued by the Court, is supposed to contravene the 74th Rule of Practice. (2 *Kelly*, 480.) It is to this effect: "Witnesses shall first be examined by the party introducing them, then cross-examined by the adverse party. Further examination shall not be had but by leave of the Court first obtained, and then only upon the declaration of the Attorney or witness that a material fact has not been stated, to which all further inquiry shall be directed."

It is not denied but that this rule of the Superior Courts restricts the discretion of the Courts as to the permission to recall a witness, which was unlimited at Common Law. Have the Judges this power? Clearly not. Their power extends to and was intended to embrace all ground uncovered by the Statute or Common Law. For instance, by Statute,

power was given to the Courts of Law in this State to establish lost papers, without specifying the mode in which it was to be done. The Superior Courts have the power to supply the deficiency. I will not say that they have not the right to make new rules.

At Americus, in the case of *Perdue against John Bradshaw*, this Court held, upon the 66th rule, in accordance with this view, that the Courts had not the power to limit the signing of a *nunc pro tunc* judgment to the time of disposing of the appeal, when, by the Common Law, the discretion of the Courts was without limitation, as to time.

In the case before us, we believe that the Common Law rule is the best, and that the discretionary power of the Court was properly exercised in this case. Indeed, we do not see that the rule of Court was impugned. The witness was recalled to prove a single fact, to which his examination was confined. In the former part of his examination, he had stated that he had seen Harford write. He did not understand, perhaps, at that time, that this laid the foundation for the expression of his opinion; after being dismissed from the stand and understanding this, he returned into Court by the permission of the Court, and gave his opinion. The introduction of the letter thus proven by the witness and read to the Jury, was of small matter after all, either way, and could not have prejudiced the plaintiff's case.

Being fully satisfied that the law, as well as the equity. of this case, has been rightly administered, we must refuse a new trial.