CARRIE M. DUPONT, plaintiff in error. *vs.* JAMES W. MAYO *et al.*, defendants in error.

(JACKSON, Judge, having been of counsel, did not preside in this case.)

1. The surety on a guardian's bond can obtain no discharge under section 1817 of the Code, without a petition, as required by section 4114, and having the ordinary to cite the guardian to appear and show cause against the application. The surety must sue in this manner for his discharge, and process must issue in terms of the law, that is, the guardian must be cited.

2. An order of discharge, based on no such proceeding, but simply accepting a new bond already executed by the guardian, with satisfactory security, in place of the old, and declaring a former surety discharged, is void.

3. Where the order of discharge does not recite that the surety has petitioned, or that the guardian has been cited, and these facts do not otherwise appear, but the order, on its face, rather indicates some informal proceeding by consent, there is no presumption that more was done than is set forth in the record.

4. Tax returns are required by law to be made by the guardian in the course of his duty, and are therefore evidence of assets to charge him and his sureties in an action against them upon the bond.

5. When the guardian is chargeable with more assets than the amount of the bond sued upon, the credits to which he is entitled should be applied to the eccess till that is exhausted.

Guardian and ward. Bond. Presumption. Evidence. Before Judge KIDDOO. Dougherty Superior Court. October Term, 1875.

Reported in the opinion.

D. H. POPE; VASON & DAVIS, for plaintiff in error.

Dupont *vs.* Mayo *et al.*

R. F. Lyon; Warren & Hobbs; Strozer & Smith, for defendants.

Bleckley, Judge.

On the 9th of January, 1871, a guardian was appointed. On the 23d he was qualified and gave bond in the sum of $6,000 00 with John C. Mathews and ·W. E. Smith as sureties. On the 13th of February thereafter, the ordinary passed an order declaring that this bond was not sufficient to cover the ward's property, and requiring an additional bond, with security, to be given in the sum of $3,000 00. On the same day a further order was passed declaring that this requisition had been complied with, and that the security for the guardianship was then ample. The additional bond thus accepted, was for $3,000 00, with W. J. Lawton, George W. Mayo and John C. Mathews, as sureties. It bore equal date with the prior bond, to-wit: January 23d, 1871. At March term, on the 13th of March, 1871, the ordinary passed an order in these terms: "It appearing to the court that James W. Mayo, guardian of Carrie Mayo, executed a bond, as such guardian, for the sum of $6,000 00, with John C. Mathews and William E. Smith securities; and it being considered and ordered that said bond is insufficient in amount, and the unwillingness of said Smith to continue as such security, insufficient in security, and it further appearing that said ·James W. Mayo, guardian, as such, has executed two bonds since, one for $3,000 00, with W. J. Lawton, George W. Mayo, and John C. Mathews, sureties, and another one for $6,000 00, (the two bonds making, in the aggregate, $9,000 00,) with said Mathews and said George W. Mayo, as sureties, to take the place, and as a substitute of the first bond given by J. W. Mayo, Mathews and Smith: It is therefore ordered that said William E. Smith be, and he is released and discharged from all liabilities thereon, on the substitute of said two bonds as aforesaid." The new bond for $6,000 00, here referred to, bore date February 17th, 1871.

The ward having become of age and married, the present suit was brought by the ordinary for her use upon the second bond, that for $3,000 00. It was commenced in August, 1874, and is against the guardian and the three sureties who signed that bond, Lawton, Mayo and Mathews. Lawton pleaded Smith's discharge from the first bond as a release of himself from all liability on the second. He proved at the trial that he became security, relying upon Smith's known solvency, and that the order for Smith's discharge was passed without his, Lawton's, consent or knowledge. If Smith were in fact discharged, regularly and properly, it might admit of some question whether Lawton's discharge would follow as a legal consequence. No rule on that subject need be settled in this case, for we hold that, on the record before us, Smith was not discharged.

1. The surety on a guardian's bond becomes bound by a contract in which the infant ward has an interest. That contract remains valid and binding until it is dissolved in the manner prescribed by law. A mode of dissolving it *pro tanto* is pointed out in section 1817 of the Code, read in connection with sections 4114 and 4115. The surety may make complaint to the ordinary, or for any reason show his desire to be relieved, and thereupon the ordinary shall cite the guardian to appear at a regular term of the court and show cause why the surety shall not be discharged; and upon hearing the parties and their evidence the ordinary may, at his discretion, pass an order discharging the surety from all future liability, and requiring the guardian to give new and sufficient security, or be discharged from his trust. The surety is to complain or show, for any reason, his desire to be relieved; that is, he is to make application for the order which he desires to be passed. Section 4114 declares that "every application made to the ordinary for the granting of any order shall be by petition in writing, stating the grounds of such application and the order sought." The section then provides for serving notice of the application where it is necessary, and the following section directs "that the order of the ordinary shall al-

Dupont *vs.* Mayo *et al.*

ways recite the names of the persons so notified, and the compliance with the provisions required." We think it is clear that the surety must *sue* for his discharge, and that the ordinary must therefore issue process; that is, cite the guardian to appear and show cause against the application. The proceeding is one between party and party; for the ordinary, after these steps are taken, is required to hear the *parties* and their evidence. The ward is not represented otherwise than by the guardian, and the guardian is be *heard* by the ordinary—heard no less for the ward's benefit than for his own. The ward has no other hearing in the matter, and as the law provides for a hearing in a certain way, unless the hearing is had in that way, the ward is not heard at all. For a judgment which affects the ward to be valid, the guardian must be brought into court by legal means: Harden, (Ky.,) 103.

2. The order discharging Smith does not appear to have been based upon any proceeding whatever. No order is produced requiring the guardian to give new security, and it does not appear that such was ever passed. It is not shown that the surety petitioned or that the guardian was cited, or that any hearing was had. The law requires petition, process, trial and judgment. Not one of these is shown except the last, and that simply provides for substituting for the first bond a bond or bonds already executed, and declares that Smith shall be thereupon discharged from all liability, he being unwilling to continue as security.

3. The order of discharge is not without recitals, but what it does recite indicates rather a consent arrangement than any regular proceeding. If it were wholly without recitals, it would, perhaps, be better than it is; for, as it is so full, there is strong reason to think, either that it is exhaustive, or that the facts left out are not such as would bear recital and leave the order as compatible with law as it now appears to be. We do not hold that the order must recite all the preliminary proceedings. That seems to be the scheme of the Code; but in this case, we need not go that far—no further, indeed, than a majority of the court went in 47 *Georgia Reports*, 195. Let

us concede that with respect to such an order as this the court of ordinary is a court of general jurisdiction, and that the express provisions of the Code in section 4115 may be disregarded by the ordinary whenever he thinks proper to do so.    Still, as some sort of a proceeding must have been conducted in the court of ordinary before the ordinary could legally have passed the order, must there not be some evidence that such a proceeding was at least commenced? Would not that much be required to give effect to any judgment of any court in a case between party and party.    Suppose this bond had been previously sued upon in the superior court and a recovery had, and that recovery had been pleaded in bar of the present action, would it have been sufficient to produce the judgment merely, without the pleadings or some other evidence of suit?    Will the mere judgment of the superior court, without more, support or defeat any action, where the power to pass the judgment depends on the filing of a petition, the issuing of process, perfecting service, etc.?    We suppose not.    Then, to require a surety who pleads his discharge by the court of ordinary, to prove his suit as well as the judgment, is to put the proceedings of that court on no lower footing than we would those of the superior court.    And we cannot reasonably be expected to put them on a higher footing.    It seems to us enough to presume in favor of any court, that its proceedings duly commenced, were conducted with regularity and supported by such evidence as the law required, without going farther and presuming, from a judgment which does not recite any suit, that there was, in fact, such a suit as there ought to have been.    We are aware that where the simple fact of a judgment is in question, the pleadings need not be shown : 1 Greenleaf on Ev., section 511 ; but it is otherwise where the party intends to avail himself of the judgment as an adjudication upon the subject matter: *Ibid.* So far from the face of the order raising a presumption that the prior proceedings ordained by statute were had, we think it is strongly suggestive that they were not had.    To test this it is only necessary to read the order with some care.

4. The tax returns of 1871, made by the guardian, as such, showed money and solvent debts then in his hands amounting to $4,500 00. This was proper evidence to charge him and his securities, a demand having, by other evidence, been shown upon him after the ward became of age and before this suit was brought.

5. The account in favor of the guardian, admitted to be correct, for $1,543 98, would not absorb the principal and interest due from the guardian in excess of the $3,000 00 bond. We can, therefore, see no reason why that account should go in reduction of the recovery on the bond. We do not think the verdict was contrary to law or to evidence, or that the court erred in any respect in favor of the plaintiff. It did err finally against the plaintiff by granting a new trial, and we reverse that judgment, and leave the verdict of the jury to stand.

Judgment reversed.