NEW YORK LIFE INSURANCE COMPANY *v.* GILMORE
*et al.*

No. 7497.    January 17, 1931.    Rehearing denied February 25, 1931.

896

*Bryan & Middlebrooks, W. Colquitt Carter,* and *Wade H. Watson,* for plaintiff in error.

*J. P. Highsmith, E. W. Highsmith,* and *Harwell, Fairman & Barrett,* contra.

Russell, C. J. (After stating the foregoing facts.) Upon careful examination, we are of the opinion that this case raises two questions, into which all other and minor issues of law dealt with by the Court of Appeals are absorbed or ·merged. A legal determination of this certiorari turns upon only two points. The letters of guardianship, which formed the judgment of the court of ordinary appointing J. M. Gilmore guardian of the property of Nannette and Winnifred Gilmore, were as follows:

"State of Georgia, Appling County. To all whom it may concern: Whereas application has been made in proper form for the appointment of a guardian for the person and property of Nannette Gilmore and Winnifred Gilmore, residing in said county, children of the late H. C. Gilmore of said county, deceased, and J. M. Gilmore has by order duly passed been appointed guardian and as such has qualified: Now know ye, that the said J. M. Gilmore is by these presents authorized, empowered, and directed to receive, collect, and take charge of the estate, both real and personal, of the said Nannette Gilmore and Winnifred Gilmore, and to do all other things which are required of him by law as said guardian of said minors, with all of the authority and powers usual in said cases." Dated May 3, 1910.

It appears from the record, that, as preliminary to this judgment, J. M. Gilmore had filed the customary application for letters of guardianship, in which is was recited, as a reason why he should be appointed guardian, that by the will and testament of the father of the two named minors, H. C. Gilmore, he had already been ap-. pointed testamentary guardian; and that upon this application the ordinary had passed the following order: "The foregoing application read and considered. It appearing that the facts stated therein are true and correct, and that the said children have no guardian, and that J. M. Gilmore has been appointed testamentary guardian by the father of said minor children, it is further ordered and adjudged that the said J. M. Gilmore be and is hereby appointed guardian of the said children, upon his taking oath as required by law."

The first question to be considered is whether the judgment of the court of ordinary appointing J. M. Gilmore guardian of the property of Nannette and Winnifred Gilmore, supplemented by the letters of guardianship, authorized the insurance company to pay

the amount of the policy to J. M. Gilmore as guardian, so that the obligation of the insurance company was discharged. In other words, was the appointment of J. M. Gilmore as guardian, as evidenced by the grant of letters of guardianship, such a judgment as authorized and required the company to pay over the proceeds of the policy to the person appointed as guardian in accordance with the judgment rendered in the court of ordinary; or, was the insurance company bound, at its peril, to inquire whether there were defects in matters of pleading, proof, and procedure antecedent to the final judgment, which would make it doubtful or unsafe for the company to make payment to this guardian? This raises a second question. Was the insurer in this case required to go behind the judgment and satisfy itself that all the proceedings in the court of ordinary were lawful, and that the court of ordinary and its officers or appointees had done and performed every act which the laws of Georgia required, precedent to the order for the letters of guardianship, so as to authorize the insurer to pay the named guardian the proceeds of the policy, before the insurer would be discharged from further liability? The undisputed evidence showed that the plaintiff in error relied upon the proofs of death and the certified copy of letters of guardianship, and accordingly took a receipt "in full payment and satisfaction of all claims and demands under policy 3231464 on the life of Henry C. Gilmore, deceased."

If J. M. Gilmore was in fact guardian for the plaintiffs, the payment of the value of the policy to their guardian would entitle the insurance company to a full receipt, and to be discharged from any further liability. The Court of Appeals, in affirming the judgment of the judge of the city court of Baxley directing a verdict in favor of the plaintiff Winnifred Gilmore, held that the defendant insurer was still liable, because the court of ordinary had no jurisdiction to authorize Gilmore to collect the insurance without requiring citation to issue and without requiring a bond, that the issuance of letters of guardianship was null and void, and that the payment made by the company to Gilmore in 1910 was a nullity and void and did not discharge the obligation of the company arising from and dependent upon the contract of insurance. We are of the opinion, that, even if the ordinary should have issued citation or required a bond before authorizing the collection of this issuance,

nevertheless the judgment of the court of ordinary in issuing letters of guardianship, which authorized the collection of the insurance, was not null and void. The court of ordinary is a court of general jurisdiction, and the judgment of a court of competent jurisdiction may be relied upon in making payment of the obligation. It is not disputed that the insurance company paid the full amount of insurance under its contract, in good faith, relying upon the order and judgment of the court of ordinary; and this judgment should be protected. It can not be doubted that the court of ordinary was clothed with jurisdiction as to the matter. The court of ordinary had jurisdiction to give letters of guardianship. To use the substantial language of Chief Justice Warner in *Cuyler* v. *Wayne*, 64 *Ga.* 79, "Whether a guardian was required to give bond and security, especially when the clerk of the superior court is appointed a guardian of minors by the ordinary, or whether it is discretionary with the ordinary to require bond and security. . . The law requires that bond and security shall be given in all cases on the appointment of a guardian by the ordinary; but the grant of letters of guardianship by the ordinary without taking bond, though erroneous, would not make the grant of letters void as against a bona fide purchaser who had no notice that bond had not been given." In this case the ordinary did not appoint Gilmore testamentary guardian. As a matter of law the ordinary can not appoint a testamentary guardian ipso facto, though he might under certain circumstances designate a substitute for one who had been appointed by the testator in his will. The mere naming of a testamentary guardian (or a guardian appointed by will) excludes the appointment of a guardian as such by the ordinary. For this reason, any discussion as to whether Gilmore was legal guardian of Nannette and Winnifred Gilmore as to any property outside of that devised by their father's will is precluded. The will of H. C. Gilmore named his brother, J. M. Gilmore, as testamentary guardian; but the fact that the wards owned other property which was not included within the will did not prevent him from acting as guardian as to property of the ward (obtained in any manner except by the will). As appears from the order of the judge of the court of ordinary, the guardian, Gilmore, was a brother of the father of the female wards. As such he was named their testamentary guardian, and was put in charge of any property devised to the wards by the

testament of H. C. Gilmore. Perhaps, in the opinion of the ordinary, his relationship was good reason for his appointment as guardian for any other property of the minors, derived from outside sources. We can not sustain the contention that he was in any sense a testamentary guardian, in so far as the proceeds of the insurance policy was concerned. The order appointing J. M. Gilmore guardian was within the jurisdiction of the court of ordinary.

But it is urged, that, conceding the general jurisdiction of the court of ordinary as to guardianships, the appointment of J. M. Gilmore as guardian of the plaintiffs was never completed or perfected, by reason of the fact that no citation issued incident to the judgment and the issuance of the letters of guardianship, and that the purported guardian did not give bond as required by law. We see no reason why citation should issue under the facts and circumstances of this case. Section 3033 of the Code provides: "Every father may, by will, appoint guardians for the persons or property, or both, of his children, and such guardians shall not be required to give bond and security, except in case of waste committed or apprehended, or property coming to the ward from sources other than the father's will, when the ordinary shall require the same. If a testamentary guardian fails to give bond as required, the ordinary may dismiss him as guardian and appoint another, or may appoint another guardian for the property thus accruing. In all other respects a testamentary guardian shall stand on the same footing with other guardians appointed by the ordinary." The main reason why citation may be necessary is to notify the kindred and friends of the minors that application has been made for letters of guardianship, so that they may have notice thereof and be heard upon any fact or feature which may have a bearing upon the appointment of the applicant or any other person as guardian. Where the applicant has already been made, by will, testamentary guardian as to such property of the ward as is included within the will, and the property is therefore a matter of testamentary disposition, there would seem to be no necessity for further notice; and the law raises an implication that there could be no better selection for guardianship of the property of the minors coming from outside sources than that already provided by the father in his own will as to their persons and the property devised by the will. This especially since the Code,

§ 3033, makes provision for the dismissal of even a testamentary guardian, where waste is committed or apprehended; or, in the event the testamentary guardian fails to give bond, the ordinary may appoint another guardian for the property coming to the ward from sources other than the father's will. In such an event the testamentary guardian would still be guardian of the person, though dismissed as guardian of the property, of the ward named in the will. From section 3033 it seems clear that no citation is necessary for the appointment of a testamentary guardian, and that a testamentary guardian might be authorized by the court of ordinary to take charge of property coming to his ward from sources other than the parent's will, without the necessity of citation. In answer to this proposition, learned counsel cites, amongst other cases, *Torrance* v. *MacDougald,* 12 *Ga.* 526, in which it was held that "Letters of administration, granted without the applicant's causing a citation to issue, and giving security, and taking the oath prescribed by law, are void." But in *DeLorme* v. *Pease,* 19 *Ga.* 220, the court criticised and reviewed the ruling in *Torrance* v. *MacDougald,* and held that it was not necessary to issue a second citation, when the first citation of application for letters of administration was for the appointment of one person, yet upon the hearing the court issued letters of administration to an entirely different person, as to whose appointment no previous notice had been given to any one. Judge Lumpkin, delivering the opinion in the *DeLorme* case, said: "And why was Rees not the administrator? The record shows that application was regularly made for letters, citation published, and that the heirs and creditors were all represented; that by consent letters were granted to Rees; that he gave the bond required by the court; and that letters did actually issue. Was there any want of jurisdiction in the court, either as to the person or subject-matter? Will not all things be presumed to have been legally done, especially after the lapse of so many years? But it is said the proceedings prove the contrary, or rebut the presumption. It is objected that the appointee was not an applicant for the office. Is this a violation of the law? And are the letters, on that account, void? We admit that the practice of appointing a different person at the hearing from the applicant is not in compliance with the letter of the act of 1799. (Cobb, 311.) And moreover, there are strong objections against it. . . Still, we

do not feel at liberty to change a construction which has uniformly and universally prevailed over the State for more than a half century."

So we see that, for practically the same reason to which we have just referred, it is now settled law that the citation which was required by statute to be issued before an administrator could be appointed was overturned, because it was unnecessary to issue more than one citation, although the original act of 1799 required a second application, or a third in case both the first and second applicants were rejected by the ordinary. As there is a difference between the creation of executors and the appointment of administrators, so likewise testamentary guardians have the same origin as executors in matters of administration, and guardians appointed by law likewise differ from testamentary guardians in their origin; but, construing section 3033 as a whole, it seems that there is no good reason why there should be citation where letters of guardianship are issued by the court of ordinary as to property of the minors, not included within the devises of a will, to one who is already testamentary guardian of the persons of the wards and of the property which has been devised. In the *DeLorme* case, supra, this principle was applied in administration upon the doctrine expressed in the maxim ratione legis cessante lex ipso cessat. The same doctrine may well be applied in a case where a court of ordinary is of the opinion that, in the grant of an application for letters of guardianship such as this, the court in the exercise of its discretion may well appoint as guardian the person who is already testamentary guardian. When such an one has been appointed legal guardian, it was in totidem verbis. The concluding words of section 3033 are: "In all other respects a testamentary guardian shall stand on the same footing with other guardians appointed by the ordinary." In *Bell* v. *Love*, 72 *Ga.* 125, *Dooley* v. *Bell*, 87 *Ga.* 74 (13 S. E. 284), and *Rusk* v. *Hill*, 117 *Ga.* 722 (45 S. E. 59), the holding of this court was that the appointment of the guardian was absolutely void, for the reason that the court of ordinary was without jurisdiction in the particular case. *Rusk* v. *Hill*, supra, is distinguished by its facts from the case at bar, in that, as stated in the case: "It appears from the record that Berry's application for appointment was not even signed." No citation was issued, but, unlike the case at bar, the estate was altogether unrepresented.

The court followed the ruling in *Torrance* v. *MacDougald,* 12 *Ga.* 516, to which we have already referred, and in consequence held that the order of appointment of Rusk as administrator was a nullity, in spite of the ruling of Judge Lumpkin in the later case of *DeLorme* in 19 Georgia. From what has been said it seems plain that the court of ordinary had jurisdiction to pass an order appointing J. M. Gilmore as legal guardian of the property of the wards received outside of the will; and that citation was not essential, because it was not necessary to confer jurisdiction of the subject-matter or the person upon the court of ordinary. The court of ordinary having jurisdiction, and having rendered a judgment, as said by Judge Lumpkin in the *DeLorme* case, all other essential requisites to the rendition of the judgment must be presumed to have been complied with.

It can not be denied that the ordinary should have required the guardian to give bond in order to authorize him to collect obligations and take charge of property coming to the minor wards from sources other than the parent's will. But this is not the question before us. The second question is, did the court of ordinary have such jurisdiction as enabled it to pass an order and judgment upon which the plaintiff in certiorari had the right to rely, and by reason of which the insurance company recognized the appointment of the guardian by the court of ordinary and paid the amount of the policy, even though it was the duty of the ordinary to require bond and he failed to perform his duty. It is the contention of the company, that, even though the ordinary should have required a bond before he authorized the collection of this insurance, nevertheless the judgment of the court of ordinary issuing the letters of guardianship authorizing the collection of the insurance money was not null and void, but was a judgment of a court of competent jurisdiction, which could be relied upon by the company in discharging its obligation by payment. It is our opinion that the decision upon this point is controlled by the ruling of this court in *Cuyler* v, *Wayne,* 64 *Ga.* 78, which was based upon the earlier case of *Tucker* v. *Harris,* 13 *Ga.* 1 (58 Am. D. 488). While there is a degree of similarity between the law of administrators and of guardians, as pointed out in numerous decisions of this court, it is to be noted that the decision in *Cuyler* v. *Wayne* treated of cases of guardianship, just as we are now considering a case of guardian-

ship. We have already quoted the language of Chief Justice Warner in the *Cuyler* case. Speaking on the subject of improper exercise of jurisdiction as affecting the validity of the judgment of a court having jurisdiction, Judge Lumpkin, in *Tucker* v. *Harris,* supra, said: "The jurisdiction may have been improvidently exercised, and in a manner not warranted by the evidence. The purchaser under the sale is not responsible for the mistakes of the court. Its decision is conclusive; its judgment, until reversed, binding in every other court. Nor can it be collaterally impeached, however erroneous and irregular. . . If the judgments of the ordinary having jurisdiction over the subject-matter be erroneous or irregular, like all other judgments they may be attacked by a direct proceeding in the court where they were rendered, and set aside or corrected. . Nevertheless, rights acquired under such judgments, before they are displaced, will be protected."

The principles enunciated in *Tucker* v. *Harris,* and *Cuyler* v. *Wayne,* supra, have been cited with approval and followed in *Sharpe* v. *Hodges,* 121 *Ga.* 798 (49 S. E. 775), where it was said: "The appointment of an administrator by the court of ordinary is a judgment by a court of general jurisdiction with respect to this subject-matter. Its judgments import verity, and are not open to attack in any other forum. The letters of administration recited every essential jurisdictional fact; and it is to be presumed, until they are set aside in the proper court, that the recitals are true. The defendants undertook to collaterally assail the letters of administration, by showing, on the cross-examination of the plaintiff, that he had not taken oath as administrator before the ordinary who had issued letters of administration. So far as the record discloses, the defendants were trespassers and were in nowise interested in the Huguley estate. A person not interested in the assets of an estate has no right to raise any question as to the legality of a judgment, regular on its face, appointing an administrator. *Jones* v. *Smith,* 120 *Ga.* 642 [48 S. E. 134]. His only concern is, that, if the plaintiff shows such title in the estate as will authorize a recovery against him, he will not be subjected to suits by any other person as heir at law or as administrator of the same. If the administrator relies, for his authority to bring the suit, upon letters of administration issued by the proper court and regular on their face, a judgment in that suit would protect the defendants against

further suit by any other representative of the estate or any person claiming an interest therein. It follows, therefore, that the court properly overruled the motion of the defendants to rule out the letters of administration on the ground that it appeared from the testimony of the plaintiff that the letters of administration were illegally issued, in that he did not take oath or execute bond before the ordinary who had issued them." There is nothing in section 3033 of the Civil Code indicating that the court of ordinary is without jurisdiction to authorize a testamentary guardian to take charge of a minor's estate without requiring bond. From the language of this section it is rather to be inferred that an ordinary may give a testamentary guardian authority in some instances, in the discretion of the ordinary, to take charge of a minor's property without requiring a bond, because the language is: "If a testamentary guardian fails to give bond as required, the ordinary may dismiss him as guardian," etc. From this it would seem that, until the guardian was actually dismissed, bona fide purchasers and bona fide payers should be protected in relying upon the authority theretofore given him by order of the court of ordinary. However, we do not base our decision upon the contention or proposition last stated; but we do hold that when, in pursuance of an order and judgment which, like in this case, authorized the named guardian to collect all the property of his wards, such guardian is authorized to collect, and the debtor is authorized to pay to the appointed guardian, the payment to such guardian effects the discharge of the debtor. If Gilmore had been appointed as guardian by the ordinary, and every prerequisite named by the law as necessary to his qualification had been complied with, it can not be denied that the insurance company would not have been bound to follow the money and be liable for its misapplication, whereby the money or some portion of it was never received by the wards. And so we hold that the petitioner in certiorari, having paid the amount due upon its policy of insurance under the letters of guardianship (a judgment of a court of competent jurisdiction, which proclaimed J. M. Gilmore as the duly constituted guardian of the plaintiffs), was not required to go behind the judgment to ascertain whether the ordinary had issued citation and had required a bond, or whether the guardian had in fact ever given any bond. In *Davie* v. *McDaniel*, 47 *Ga.* 195, it was ruled: "Courts of ordinary are

courts of original, exclusive, and general jurisdiction of the sale and disposition of the real property belonging to, and the distribution of, deceased persons' estates. . . The order of the court of ordinary granting leave to an administrator to sell the lands belonging to the estate he represents is his authority for so doing. The authority being shown, the law 'presumes the court of ordinary required all the law requires to have been done, before granting the order to sell; and we will not go behind that judgment:' 4 *Georgia,* 154. . . 'The order to sell being a judgment of a court of competent jurisdiction imports, legally, a necessity for the sale, and such judgment can not be attacked and set aside collaterally. It is not only leave to sell, but it is a judgment of the court that such sale will be for the benefit of the heirs and creditors of the estate. In favor of this judgment we are to presume the court did its duty:' 7 *Georgia,* 562." And paraphrasing, we see in this case that the letters of guardianship, authorizing the guardian to collect the assets of his wards, amounted to a judgment of a court of competent jurisdiction, and imported legally a necessity for the collection, and such judgment can not be attacked and set aside collaterally. In favor of such judgment, we are to presume the court did its duty. *Judgment reversed. All the Justices concur.*

ATKINSON AND HINES, JJ., concur in the result.