**TUCKER v. AMERICAN SURETY CO.
OF NEW YORK.**

No. 13703.

United States Court of Appeals
Fifth Circuit.

Oct. 30, 1951.

Randall Evans, Jr., Thomson, Ga., Joseph B. Cumming, Augusta, Ga., for appellant.

C. Baxter Jones, Macon, Ga., Larry E. Pedrick, Waycross, Ga., for appellee.

Before SIBLEY, RUSSELL, and RIVES, Circuit Judges.

SIBLEY, Circuit Judge.

Appellant, Mrs. Adele. Louise Tucker, was adjudged insane by due proceedings in the Court of Ordinary of Ware County, Georgia on December 18, 1929, and on the same date the Court ordered that "W. W. Sharpe, Sr. be and he is hereby appointed guardian of the person and property of Mrs. A. L. Tucker and that letters of guardianship issue to the said W. W. Sharpe, Sr. upon his taking the usual oath and giving bond and security as required by law in the sum of Forty Thousand Dollars ($40,000) * * *." Sharpe, on the same date, took his oath and the Ordinary issued to him letters of guardianship. The letters do not recite the giving of a bond, nor do the minutes, nor is there recorded a bond of $40,000.00 in the bond book required to be kept by the Ordinary. Nothing further was done about the estate in Court till December 23, 1929, when the guardian filed in Court a petition under oath alleging that he is the duly appointed, qualified and acting guardian of Mrs. A. L. Tucker, that she has a large amount of real estate in Florida which he has sought to take charge of, but has learned his Georgia guardianship is not valid in Florida, and he will not be in charge of the Florida real estate or responsible therefor; that he was placed under a bond of $40,-000.00 in contemplation of his taking charge of said Florida real estate; but the only estate he will have in his hands consists of some jewelry and a monthly income not exceeding $200.00; that funds. in his hands are insufficient to pay a premium on a bond of $40,000.00, and a bond of $2,-000.00 would be amply sufficient. On the same day an order was made: "The above and foregoing petition read and considered. It is ordered that bond in said matter be reduced from Forty Thousand Dollars to the sum of Two Thousand Dollars and that the old bond of Forty Thousand Dollars be cancelled and that a new bond issue in the sum of Two Thousand Dollars." On December 26, 1929 a bond in the sum of Two Thousand Dollars with American Surety Company by H. H. Burnett, Agent, as surety was made, attested and approved by the Ordinary, and recorded in the bond book. That bond is now in the files of the Court, as is a Power of Attorney dated December 17, 1929 from the American Surety Company to a local agent, H. H. Burnett, authorizing him to execute "bond in the sum of Forty Thousand Dollars on behalf of W. W. Sharpe as guardian of Mrs. Tucker". The Guardian made regular annual returns, showing the payment of $12.50 premium for a $2,000.00 bond each year, the first in January, 1930. There is no record of a larger premium paid on a larger bond at any time. The guardian died in 1939, and it is alleged that there has been no representation on his estate.

Mrs. Tucker was adjudged restored to sanity in 1949, and brought in a State Court a suit on an alleged $40,000.00 bond against American Surety Company as surety for W. W. Sharpe, Sr. as her guardian, dated December 18, 1929, alleging a large *devastavit*. The suit was removed to the Federal District Court. One defense denied that the Company had ever executed a bond of $40,000.00, but that if it had, the bond·for $2,000.00, which it did execute, was validly substituted for it. This defense was ordered tried separately and, as a result, a verdict was directed for the defendant. The judgment entered is without prejudice to a suit on any bond other than the one sued on. On this appeal two questions are argued: Is there any sufficient evidence that American Surety Company ever executed the $40,000.00 bond sued on? Was the judgment of the Court of December 23, 1929 effective to annul such bond if executed?

The evidence was, in the main, the records of the Court of Ordinary stated above. All the proceedings occurred during the December Term, 1929. No other orders were made in that term about this estate. The then Ordinary is dead, as is the local agent of the surety company, and the guardian. No one testifies who ever saw a $40,000.00 bond. The attorney who procured the adjudication of insanity as representing a Mrs. Hay, and who also signed as attorney the petition of the guardian to reduce the bond, is in life, but neither side took his testimony. We do not know, nor can we guess, what he knew or remembers. He is not in any way connected with the American Surety Company, nor was he in 1929, and we see no sound basis for an inference against that Company for not producing him. Bank of Emanuel v. Smith, 32 Ga.App. 606, 124 S.E. 114; Brothers v. Horne, 140 Ga. 617, 618(3), 79 S.E. 468. But it appears that American Surety Company, on the day before the guardian was appointed, authorized its local agent to execute a $40,000.00 bond, and this authority went into the Ordinary's file, and he issued letters of guardianship, which is not usually done till bond is made, and the guardian on December 23 in his petition stated that he is duly qualified as guardian, and wants his bond reduced. The Ordinary's judgment on that date speaks of "cancelling the old bond for Forty Thousand Dollars" as though it were in existence. Against these things is to be put the absence of the $40,000.00 bond from the files, absence of its approval by the Ordinary which the Statute requires, and of its record in the bond book also required (Ga. Civil Code·of 1910 [1] Sects. 3047, 3048 and 3090), and the fact that no large premium appears to have ever been paid, the guardian swearing that the estate did not have enough money. It may be that a bond for $40,000.00 was prepared, even signed by the local agent, and was to be paid for by the guardian and approved by the Ordinary so soon as the guardian could go to Florida with his letters and get funds. The letters would be valid without a bond; New York Life Insurance Company v. Gilmore, 171 Ga. 894, 157 S.E. 188. Though Mrs. Tucker has the burden of proof, it may be that on these facts a jury question was presented as to the bond having been fully executed and made effective.

But we think the direction of the verdict was proper because the $40,000.00 bond, if made, fell with the change made in the judgment fixing it before the end of the term. It appears that in Georgia there is no provision of law for reducing or cancelling a guardian's bond, except that a surety can obtain release by getting another surety to take his place both as to past and future defaults of the guardian. Ga.Civil Code of 1910, Sec. 3052. But the point here is that the change was made within the same term of the Court. Until adjournment *sine die* or the coming on of another term the judge had full control of the judgment. Citing a multitude of cases, State and Federal, 49 C.J.S., Judgments, § 229 states: "At common law a court has full control over its orders or judgments during the term at which they are made, and may, on sufficient cause shown amend, correct, open, or vacate such judgments.

---

1. Citations are made to the Ga.Code of 1910, of force in 1929, though equivalent sections are in the Code of 1933, now in force.

\* \* \* This power is inherent and exists independently of any statute." In a case appealed from this Court the Supreme Court in Zimmern v. United States, 298 U. S. 167, 56 S.Ct. 706, 80 L.Ed. 1118, so held, citing its earlier decisions. A few of the many Georgia cases in the State Supreme Court are: Jordan v. Tarver, 92 Ga. 379, 17 S.E. 351; Cooley v. Tybee Beach Company, 99 Ga. 290, 25 S.E. 691, from a City Court; Bowen v. Wyeth, 119 Ga. 687, 46 S.E. 823, where "courts of record" are stated to be within the rule; Perkins v. Castleberry, 119 Ga. 702, 46 S.E. 825, where equity cases were held to be within this rule of law in Georgia; Berrien County Bank v. Alexander, 154 Ga. 775, 115 S.E. 648; Gaines v. Gaines, 169 Ga. 432, 150 S. E. 645; Kerr v. Kerr, 183 Ga. 573, 189 S. E. 20; East Side Lumber and Coal Company v. Barfield, 193 Ga. 273, 276, 18 S.E. 2d 492. No case has been found involving the Court of Ordinary, but in Georgia it, like the Superior Court, is established and given its general jurisdiction by the successive Constitutions of the State, that of force in 1929 being the Constitution of 1877, Art. 6, Sect. 6. It is a court of record, the Ordinary being its clerk ex officio, though he may appoint a clerk, Ga.Civil Code of 1910, Sect. 4812, 4815, 4816, 4805. "Courts of ordinary have authority to exercise original, exclusive, and general jurisdiction of the following subject-matters: \* \* \* 5. The appointment and removal of guardians of minors and persons of unsound mind. 6. All controversies as to the right of guardianship. 7. The auditing and passing returns of all executors, administrators, and guardians. \* \* \* 10. Of all such other matters and things as \* \* \* relate to estates of deceased persons, and to idiots, lunatics, and insane persons. \* \* \*" Civ.Code 1910, § 4790. The Courts of Ordinary have always been held to be Courts of general though limited jurisdiction, and their judgments carry all the presumptions of regularity and correctness that appertain to courts of general jurisdiction. New York Life Insurance Company v. Gilmore, 171 Ga. 894, 157 S.E. 188; Stuckey v. Watkins, 112 Ga. 268, 37 S.E. 401; Davis v. Howard, 56 Ga. 430;

Perkins v. Attaway, Gdn., 14 Ga. 27. We see no reason to doubt the application to it of the rule as to the inherent power of courts to control their judgments during the terms.

It is objected that a judgment of the Court of Ordinary must "recite the \* \* \* persons so notified, and the compliance with the provisions required": Ga. Civil Code 1910, Sect. 4813. But this section refers to the service of notice of original proceedings provided in the preceding section. No particular form of notice is needed for modification of a judgment during the term, though notice to the parties would seem reasonable. See Jordan v. Tarver, 92 Ga. 379, 17 S.E. 351, supra. But here there was ample notice. The guardian represented Mrs. Tucker, as did the Ordinary, who also is charged by law with looking after her estate. The attorney who procured the guardianship was participating. The surety, assuming that a bond for $40,000.00 had been signed, was acquiescing, for the premium on it was not collected, but a bond for $2,000.00 was given by it and the small premium due for it was paid during the life of the guardian. The authority to make a $40,000.00 bond was filed with the Ordinary to show the local agent's right to make the $2,000.00 bond, on the principle, we suppose, that the greater includes the less.

Lastly, it is urged that the order of December 23, 1929, is on its face an effort to cancel a guardian's bond, a thing not authorized by Georgia law. See Great American Indemnity Company v. Jeffries, 65 Ga.App. 686, 16 S.E.2d 135; Dupont v. Mayo, 56 Ga. 304. This would seem to be true if this were an original proceeding, but it is not such, but is a modification during the term of the judgment appointing the guardian in that part of it which required giving a $40,000.00 bond, on a showing that such a bond was an unreasonable requirement under the circumstances, and would continue to be a heavy, perhaps disastrous burden to the estate. The real intent of the Court was to do that which could then be done, to wit, revise the judgment so as to require a $2,000.00 bond. This was the exercise of a discretion with-

in its power. It in effect amended the judgment during the term. It was not done for the benefit of the surety, for it would have preferred the large bond if it could have been paid for; nor for the benefit of the guardian, for his personal liability to the estate is the same under any size bond, or if there were no bond at all. All was done for the benefit of the estate as it then appeared. Additional bond could have been required by the Ordinary at any time if needed, and the guardian removed if he did not give it. Ga.Civil Code 1910, Sect. 3049. This being the intent and effect of the order of December 23, 1929, we hold it to have been within the power of the Court. If under the judgment of December 18, the larger bond had been signed, or even approved by the Court, though not recorded, it fell with the provision of the judgment which required it, nothing having been done under it, as the minutes show, and the monthly term not having ended. On this ground

The Judgment is affirmed.