RICE v. WILSON.

1. GUARDIAN AND WARD—ACCOUNTING—SURETIES—LIABILITY.

An order settling a guardian's final account is binding on his sureties, in the absence of fraud, though they have no notice of the proceeding; the bond being conditioned that the guardian shall render such account, and pay over the amount found due thereunder.

2. SAME—DISCHARGE.

Under 3 Comp. Laws, § 9501, providing that any surety on a probate bond may, upon his petition to the probate court, be discharged, if the court, after due notice to all persons interested, deems it proper, the discharge of a surety on a guardian's bond is void where it is made without notice to the ward or his next of kin, and without examination of the guardian's account, but merely on the verbal application of the surety and the consent of the guardian.

Error to Jackson; Peck, J. Submitted January 10, 1902. Decided March 4, 1902.

William J. Rice presented a claim against the estate of John C. Bader, deceased, on a guardian's bond. The claim was disallowed by the commissioners, and claimant appealed to the circuit court. From a judgment for claimant, May E. Wilson, administratrix of said estate, brings error. Affirmed.

This case was tried before the court without a jury, and a finding of facts and law made. The facts found are substantially as follows: The father and mother of claimant, William J. Rice, were killed in a railroad accident in 1879. Suit was brought against the railroad company, and a large verdict obtained One Mary C. Rogers, an aunt of William, was appointed his guardian. On December 23, 1879, the amount of the judgment was turned over to her, and a bond filed, with four sureties, named Buyse, Casey, Bader, and Carey. The bond is in the usual form. Bader signed the bond upon condition that the assets be turned over to Carey for management. This was done. William at that time was four years old. The value of the assets was $14,700, which Carey took, managed, and controlled until his death, July 26, 1892.

All the probate files in the estate of said William prior to January 7, 1896, are lost. Only the calendar entries are preserved, which show on May 8, 1891, a request in writing by Bader and Casey to have the guardian file her account, citation issued, and an account for the years 1889 and 1890 filed May 21, 1891. The probate records show an order, dated June 6, 1891, that the guardian file within 30 days a new bond in the sum of $20,000, and that, on the filing and approval of such bond, Casey and Bader be released from all further responsibility. Carey never accounted to Miss Rogers for the moneys received by him, and she knew nothing as to the condition of the estate except what Carey told her, and she signed the accounts rendered upon the assurance of Carey that they were all right. The account for the years 1889 and 1890 commences with the following item: "To amount of personal property, as per report filed December 31, 1888, $10,972.-28." It contains an account of receipts and expenditures, and closes with the statement, "Total amount on hand December 31, 1890, $11,961.77."

After Carey's death, the only property found in his hands or in his name belonging to said ward was a house

and lot and one mortgage of $1,725. August 25, 1892, Buyse was appointed executor of the last will of Carey. Miss Rogers, as guardian, presented a claim against Carey's estate for $10,027.78, which was allowed by the commissioners, less amounts paid since the death of Carey by his executor. From that allowance no appeal was taken. Buyse filed an account as executor July 16, 1894, but died April 2, 1895, without any hearing being had thereon. His executor, one Elson, filed Buyse's final account on November 22, 1895, which was duly allowed. Among the credits allowed in favor of the guardian was one of $1,875.10, paid by Buyse to her. One Harrington succeeded Buyse as executor of Carey's estate, and paid to William $1,982.86, to apply on his claim allowed against the Carey estate.

June 6, 1891, Casey, Bader, Carey, and Miss Rogers went into the probate court, and Casey and Bader verbally asked to be released upon their bond for said guardian. She consented, and thereupon the order of release as above stated was made, and a new bond given by Carey and Buyse, the two other sureties upon the old bond, and approved. No notice of the application of said sureties for the release or of the hearing thereon was given to the ward or his next of kin.

January 6, 1896, Miss Rogers resigned as guardian. Her resignation was accepted, and one Birney appointed guardian, and duly qualified. February 25, 1896, Birney filed a petition in the probate court asking that Miss Rogers be cited to render an account. A citation was issued, returnable March 4th, and duly served. On February 28th she filed a sworn answer, stating that she turned over the entire assets of said estate to Carey; that they were managed and controlled by him as her agent; that she had rendered no account,—had been unable to do so, because she had no knowledge of the condition of the estate, except as was obtained from Carey, and that not in detail; that on two occasions Carey had prepared accounts, and requested her to sign them, and that she

did so without any knowledge of the matters therein contained; that the greater part of the assets of said estate was squandered by Carey; that she had presented a claim against the estate of said Carey, which was allowed, as above stated; and that she had no property in her hands or under her control belonging to said minor's estate. On March 4th, the return day of the citation, Miss Rogers appeared in the probate court, was sworn and examined, whereupon the court made a computation finding that Miss Rogers was accountable for the moneys which came into her hands, and interest thereon, amounting to $32,042.64, and gave her credit, with interest thereon, amounting to $11,630.94, leaving a balance of $20,411.70, which the court ordered her to pay over to said Birney. No date was fixed for hearing the account of Miss Rogers, and no notice of said proceedings given, except the service of the citation upon her.

Bader died September 30, 1897, and the contestant, his daughter, was appointed administratrix of his estate. William, who had then become of age, presented a claim against his estate, claiming that he was responsible on the bond of his aunt, Miss Rogers. The commissioners disallowed the claim, and an appeal was taken to the circuit court.

No part of the moneys in the hands of John Carey was paid to Miss Rogers. Prior to the proceedings by Bader and Casey for their discharge, eight mortgages were recorded, amounting to $8,172, taken in the name of John Carey for William J. Rice, and had been discharged. After the death of Buyse, Mr. Birney, as guardian for William, presented a claim against that estate identical with this, except in the name of the deceased. This claim was allowed by the commissioners, an appeal taken by the executor of Buyse's estate, and, before trial, was compromised by William, who was then of age, for the sum of $6,350.

The court held that claimant was entitled to a judgment of $7,518. The court made the following findings of law:

1. The order of the probate court fixing the amount due from the guardian, Mary C. Rogers, was binding upon the sureties on her bond.

2. The order discharging the sureties Bader and Casey was irregular, and did not operate to release and discharge them from future liability.

3. It was competent for claimant to prove that, before the attempted release and discharge of the sureties, the guardian had misappropriated a larger amount of his estate than the aggregate claim allowed in this case, and that the sureties are liable for that amount, though released and discharged by the order of June 6, 1891.

*Richard Price*, for appellant.

*Wilson & Cobb*, for appellee.

Grant, J. (*after stating the facts*). 1. The law did not require notice of the final hearing of the account of Miss Rogers as guardian to be given to the sureties. The judgment rendered by the probate court is conclusive and binding upon them, in the absence of collusion or fraud. The bonds of executors, administrators, and guardians are placed by the courts upon a different basis from those given by sheriffs, treasurers, etc., for the performance of their duties. The distinction is probably based upon the theory that the former are intrusted with estates which are under the control of the courts; that they must render accounts to such courts, and have them determined and the amount fixed before suit upon the bond. One of the conditions of the bonds is that they shall render accounts, and, if such guardians, etc., do not pay the judgments found against them by the court, the sureties will. These bonds stand on the same basis as do bail and appeal bonds in suits at law. In each case there must be a judgment against the principal before the bail can be sued. Not so, however, with bonds of sheriffs, treasurers, etc. It is no condition of their bonds to pay any judgment that courts may render against them. The universal method pursued is to sue the principal and sureties in the same suit. 2 Brandt, Sur. § 638, where the rule and the reason

therefor are well stated, and authorities cited; *Meyer* v. *Barth*, 97 Wis. 352 (72 N. W. 748, 65 Am. St. Rep. 124). The Wisconsin statutes appear to be the same as our own. 2 Chat. Prob. Law, § 2781.

2. The discharge of Bader and Casey was wholly irregular and void. The proceedings to procure a discharge are regulated by statute.

"Any surety may, upon his petition to the probate court, be discharged from all further responsibility, if the court, after due notice to all persons interested, deems it reasonable and proper, and the principal may thereupon be required to give a new bond." 3 Comp. Laws, § 9501.

The probate court can only act upon a petition filed by the surety who desires to be released, and a notice to all persons interested. The guardian in this case appears to have been utterly irresponsible financially. Her ward at that time was 16 or 17 years of age, and, under the law, entitled to choose his guardian. She had abdicated her entire duty under her own statement, and had intrusted the management of the estate to an agent, who squandered it, and evidently had squandered a large part of it at the time of the pretended release of these sureties. It is not improbable that this fact was known to Bader and Casey. An account had, at their request, been filed. They had contracted by their bond that that account should be correct. It was then not only their right, but their duty towards Miss Rogers' ward, to have this account investigated before allowance. They did not even ask to have it allowed. No examination was made by the court, and the account was never passed upon. A notice served upon the ward himself, or upon his next of kin, might have prevented the discharge of the sureties until an accounting had been had, which should fully have determined the amount for which they were then liable. The statute is designed to prevent the possibility of collusive proceedings between the guardian or administrator and his sureties. The statute contemplates a hearing, from which a judge

of probate must determine that such release is reasonable and proper.

These holdings render it unnecessary to discuss the other questions raised. The judgment is affirmed.

HOOKER, C. J., MOORE and MONTGOMERY, JJ., concurred. LONG, J., did not sit.