## LAWSON *et al. v.* LYON.

A beneficiary certificate for $1,350 was issued by the "Grand Lodge of the Brotherhood of Railroad Trainmen" to a member of a local lodge. Section 68 of the rules of the Lodge provided that the Grand Lodge would pay to a member, upon named conditions, the amount of the certificate he held if he should "suffer the amputation or severance of an entire hand at or above the wrist joint." Section 70 of the rules provided: "All claims for disability not coming within the provision of Section 68 shall be held to be addressed to the systematic benevolence of the Brotherhood, and shall in no case be made the basis of legal liability on the part of the Brotherhood. Every such claim shall be referred to the Beneficiary Board, composed of the President, Assistant President, and General Secretary and Treasurer, who shall prescribe the character and decide as to the sufficiency of the proofs to be furnished by the claimant; and if approved by said Board, the claimant shall be paid an amount equal to the full amount of the certificate held by him; and such payment shall be considered a surrender and cancellation of such certificate, provided that the approval of said Board shall be required as a condition precedent to the right of any such claimant to benefit hereunder; and it is agreed that this section may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claim. No appeal shall be allowed from the action of said Board in any case; but the General Secretary and Treasurer shall report all disapproved claims made under this section to the Board of Insurance at its next annual meeting, for such disposition as such Board of Insurance shall deem just and proper." The hand of the member. holding the certificate above referred to "was cut off below the knuckle in front of the thumb," and he applied to the Grand Lodge because of such injury for the payment. After the claim was approved by the Beneficiary Board, the holder of the certificate gave to one who purchased his claim to the extent of $750 an order for that amount on the secretary and treasurer of the Grand Lodge. *Held:*

(a)   This order was not invalid on the ground that the claim of the
holder of the certificate was a "bare contingency or possibility" and
not a subject of sale.

(b)   The order passed to the holder thereof at least an equitable assign-
ment of the claim to the extent of $750; and if the order did not divest
the maker thereof of the legal title to his claim to the extent of $750,
the latter could not rightfully and justly collect the money paid on
that part of the claim for which he had given the order.

(c)   Where the holder of the certificate is insolvent, he may be enjoined
from receiving, and the financier of the local lodge may be enjoined from
paying him, any money that may be sent by the Grand Lodge in settle-
ment of the claim for which the order was given.

(d)   ·If there was a nonjoinder of necessary parties, this would furnish
no ground for reversing the grant of a new trial.

APRIL 14, 1911.

Equitable petition.   Before Judge Pendleton.   Fulton superior
court.   June 27, 1910.

Alexis A. Lyon brought the present action against Charles Lawson
and George W. Lyon.   The last named was made a party because he
·was the financier of a local lodge through whom it was expected
payment would be made to the other defendant of a claim herein-
after explained, and no relief was sought against him except to
enjoin him from delivering to his codefendant any check or other
instrument in payment of the claim.   As he was practically a
nominal defendant to whom but little further reference. will be
necessary, the plaintiff will be referred to as Lyon and the defend-
ant as Lawson.   In brief, the case made by the allegations of the
petition was that Lawson held a certificate in the Brotherhood of
Railroad Trainmen, and, on account of an injury received, had
pending against its Grand Lodge a claim on account of total and
permanent disability amounting to $1,350.   At the solicitation of
Lawson, Lyon purchased $750 of this claim, paying Lawson there-
for the sum of $250, and receiving from the latter an assignment
of the claim to that extent.   The details of the transaction will
more fully appear from the agreed statement of facts, the evidence,
and the contents of certain written documents hereinbelow set out.
It was alleged that Lawson was endeavoring to collect that portion
of the claim assigned to the plaintiff; and that should he succeed
in doing so, being insolvent, the plaintiff would be defrauded of
his right to collect the $750 and would lose the $250 paid to Law-
son.   It was averred that the Grand Lodge was located without the
jurisdiction of the court, but that any remittance sent by it to the

local lodge to be delivered to Lawson in payment of the claim would be sent to its financier for. delivery. The plaintiff sought an injunction against Lawson to prevent him from collecting the claim and from undertaking to assign it, and also, as above stated, against the financier of the local lodge to prevent him from delivering to Lawson any instrument in payment of the claim. By amendment, one P. F. Brinkley, who had succeeded to the office of financier, was made a party defendant in lieu of G. W. Lyon, his predecessor. The plaintiff by a second amendment asked that the title to and the right to collect that part of the fund claimed by him be decreed to be in him, and for general relief. Upon the trial of the case, the court, at the conclusion of the evidence, directed a verdict in favor of the defendant; and upon the hearing of a motion for a new trial, made by the plaintiff, granted the motion, to which order the defendants excepted.

Upon the trial the plaintiff testified, that, after several conversations with Lawson in which the latter tried to induce him to purchase the claim, he agreed to buy the balance of the claim amounting to $750 (plaintiff claiming that Lawson had previously assigned the other portion of the claim to another), and to pay Lawson $250 therefor, which he did, paying him $50 one day and taking receipt therefor, and the balance of $200 the day following, when he took from Lawson an order authorizing the payment to him of the $750. The receipt and order referred to were introduced in evidence, the receipt being as follows: "Received of A. A. Lyon fifty dollars as part payment on the balance of $750.00, seven hundred and fifty dollars, claim I have on insurance policy No. ———— in the B. R. T., of which H. E. King is Treasurer. The balance of two hundred dollars will be paid in 3 days. Should the deal now pending for the whole claim fail, the whole claim is for thirteen hundred and fifty and the price for the whole claim is six hundred and fifty, if this trade for the whole claim fails, then the above contract is to be carried out for the $750.00, seven hundred and fifty dollars as stipulated above. This 7th Oct. 1908. [Signed] Charles Lawson." The order was as follows: "Atlanta, Ga. Oct. 8th, 1908. State of Georgia, Fulton County. A. E. King, G. S. & T. Cleveland, O. You are hereby authorized and you will please pay to Alexis A. Lyon seven hundred and fifty dollars ($750.00) out of my claim for disability which is now

pending before the insurance board of the Grand Lodge, for value received, and oblige. [Signed] Charles Lawson. Member of Altoona Lodge 302. Signed in presence of O. H. Puckett, J. P." A letter from King, G. S. & T., to Lyon, dated Nov. 12, 1908, which was introduced in evidence, read as follows: "I am in receipt of your letter of the 10th instant from Chas. Lawson, a member of our organization, for the deduction of $750 from his disability claim, which amount I understand was loaned to him by you. In such cases we have our regular form of order, and I return your order herewith and enclose our blank form. Please have Mr. Lawson sign the same and his signature witnessed by the secretary and financier of the lodge of which he is a member, after which return to me promptly; and when the claim is ready for payment, which should be about December 12th, a draft for $750.00 in your favor will be forwarded to our lodge in your city for delivery to you." The body of the form referred to in this letter was as follows: "You are hereby authorized to deduct from the amount due me on account of my total and permanent disability under beneficiary certificate #200540, held by me as a member of Altoona Lodge #302, Brotherhood of Railroad Trainmen, the sum of $750.00, this being amount of money loaned me by Alexis A. Lyon on account of my said disability, and you are further authorized to pay the said sum of $750.00 to said Alexis A. Lyon." This document, dated November 25, 1908, was signed by Lawson, but at his instance the secretary and financier of the local lodge refused to sign it as a witness. The following agreed statement of facts appears in the record: "1. The beneficiary certificate issued by the Grand Lodge of the Brotherhood of Railroad Trainmen for the defendant as a member of Altoona Lodge No. 302 provided that he should be entitled to all the rights, privileges, and benefits of membership, and to participate in the beneficiary department, Class C, of said Brotherhood to the amount set forth in the constitution thereof, which amount in the event of his total and permanent disability should be paid to him, which amount should become due only upon the presentment of proper proofs to be made in accordance with the constitution and by-laws of the Brotherhood; that the said Lawson should 'comply with the constitution, by-laws, rules, and regulations now in force or which may hereafter be adopted by the within named Brotherhood, which, as printed and

published by the Grand Lodge of the said Brotherhood, are made a part hereof.' Said certificate was issued on the —— day of ——————, 190—. (2) It is further stipulated that the printed constitution and rules of said Brotherhood, as purporting to be printed by their authority, may be admitted in evidence without proof, in so far as relevant to the case. (3) It is further agreed that on the 8th day of October, 1908, the claim of Charles Lawson for disability was pending before the Beneficiary Board of said Brotherhood, but had not been approved by said Board, and that said Board approved said claim prior to November 12, 1908." There was also introduced in evidence the following rule of the Brotherhood: "Section 70. All claims for disability not coming within the provision of Section 68 shall be held to be addressed to the systematic benevolence of the Brotherhood, and shall in no case be made the basis of any legal liability on the part of the Brotherhood. Every such claim shall be referred to the Beneficiary Board, composed of the President, Assistant President, and General Secretary and Treasurer, who shall prescribe the character and decide as to the sufficiency of the proofs to be furnished by the claimant; and if approved by said Board, the claimant shall be paid an amount equal to the full amount of the certificate held by him, and such payment shall be considered a surrender and cancellation of such certificate, provided that the approval of said Board shall be required as a condition precedent to the right of any such claimant to benefit hereunder; and it is agreed that this section may be pleaded in bar of any suit or action at law, or in equity, which may be commenced in any court to enforce the payment of any such claim. No appeal shall be allowed from the action of said Board in any case; but the General Secretary and Treasurer shall report all disapproved claims made under this section to the Board of Insurance at its next annual meeting for such disposition as such Board of Insurance shall deem just and proper." Section 68 of the rules provided that the Grand Lodge would pay to a member, upon named conditions, the amount of the certificate he held if he should "suffer the amputation or severance of an entire hand at or above the wrist joint." The defendant Lawson, who held the certificate, had his hand "cut off below the knuckle in front of the thumb." Other evidence was introduced, both by

plaintiff and defendant, none of which is deemed necessary to be set out here.

*Anderson, Felder, Rountree & Wilson,* for plaintiffs in error.

*A. H. Davis,* contra.

HOLDEN, J.  (After stating the foregoing facts.)   Counsel for the plaintiffs in error in their brief make the following contentions: "The verdict was proper, and the grant of a new trial error, as a matter of law.   The fatal legal defects in plaintiff's case are: 1. Lawson's claim was not assignable.  2. The order on the Grand Secretary was not an assignment, legal or equitable.   3. If an equitable assignment, it could not be asserted in a proceeding to which neither the assignee of the other portion of the claim, nor the Brotherhood, was a party; and 4. There was no proof of Lawson's insolvency."  If Lawson had "suffered the amputation or severance of an entire hand at or above the wrist joint," the Lodge would have been absolutely liable for the full amount of the certificate, had its provisions been complied with.  His "hand was cut off below the knuckle in front of the thumb."  The injuries received by Lawson were not such as to create on the part of the Lodge, under its rules, any absolute liability on its part to pay Lawson anything on account of such injuries.  The injuries he received were such as made a claim on account thereof "addressed to the systematic benevolence of the Brotherhood."  This provision of the rules was probably intended to meet instances where injuries were received not exactly coming within the class for which the Lodge made itself absolutely liable, but so nearly so as to cause the Lodge to have a systematic method of considering a claim for such injuries and to pay the injured party therefor in its discretion, though under such provisions the Lodge would have the right to pay the full amount of the certificate to the member holding the same on account of *any disability* he might suffer.  The injury received by Lawson was not exactly, but almost, within the class for which the Lodge made itself absolutely liable to pay.  Under the rules of the Grand Lodge, Lawson had the right to present his claim for such injuries to the "systematic benevolence of the Brotherhood."  The language of the rule hereinbefore referred to shows that not only was it the right of Lawson to present to the Lodge his claim on account of the injuries he received, but that the Lodge had a system for the consideration of such claims, and had

the right to pay the same. Before Lawson, on October 8, 1908, gave to Lyon an order on the secretary and treasurer of the Lodge for $750, to be paid out of his claim, he had presented his claim to the Lodge, and they had had the question of its payment under consideration. The claim of Lawson was approved by the Beneficiary Board before November 12, 1908. On November 25, 1908, after the claim was thus approved, Lawson gave to Lyon another order on the secretary and treasurer of the Lodge for the $750, to be paid out of the claim. This order given by Lawson after the claim was approved was not void under the provisions of the Civil Code (1910), § 4117, that "A bare contingency or possibility can not be the subject of sale, unless there exists a present right in the person selling, to a future benefit." After the claim was thus approved, it can not be said that it had no potential existence, even if it could be said that prior to its approval it lacked sufficient potentiality to make it assignable. In Dickey *v.* Waldo, 97 Mich. 255, 261 (56 N. W. 608, 23 L. R. A. 449), it was said: "In the legal sense, things are said to have a potential existence when they are the natural product or expected increase of something already belonging to the vendor." The last order on the secretary and treasurer of the Grand Lodge given by Lyon to Lawson was enclosed in a letter from that official to Lyon under the date of November 12th, after which date it was presented to Lawson and signed by him. The receipt signed by Lawson and the orders given by him designate the fund out of which the $750 was to be paid. The orders did not merely .direct the secretary and treasurer to pay Lyon a certain amount, but specified the fund on which they were drawn; and certainly, after the approval of the claim, the order then given amounted to an equitable assignment thereof to the extent of $750. Even if the orders given by Lawson did not divest him of the legal title to the fund to the extent of $750, he should not be permitted to claim and collect that to which Lyon had the equitable title by reason of these orders. Lawson could not rightfully and justly claim that to which he had formally passed the equitable title to Lyon, even if he did not part with the legal title thereto. *Fidelity & Deposit Co.* v. *Exchange Bank,* 100 *Ga.* 619, 622-623 (28 S. E. 393). The Grand Lodge is not a party and is not setting up any defense. It appears that the Beneficiary Board has approved the claim, and

the Grand Lodge is ready to pay it. The question, therefore, arises between the assignor and the assignee of such approved claim.

There was evidence tending to show insolvency on the part of Lawson. Error was assigned on the order overruling a demurrer to the petition; but as no reference to this assignment was made in the briefs of counsel for the plaintiff in error, it will be considered as abandoned. Whether or not the person to whom it was claimed Lawson had transferred the balance of the claim of $1,350, or the Grand Lodge, either or both, were necessary parties to the injunction proceedings, a verdict in favor of the defendants was not demanded because they were not made parties, it not appearing that the question of nonjoinder of parties was raised in the court below or passed upon before the rendition of the verdict. *Hunt* v. *Doyal,* 128 *Ga.* 416 (57 S. E. 489). The plaintiff testified that he purchased from Lawson his claim to the extent of $750 for the sum of $250, and that in pursuance of this contract of purchase he paid Lawson the $250 and took from him the orders. We have treated the case on the theory that the contentions of the plaintiff in these respects were true, as counsel for Lawson in their briefs contend that the latter had no claim which was assignable, and that the orders given by Lawson were not valid either as a legal or as an equitable assignment. The evidence did not demand the verdict, and the first grant of a new trial by the court below will not be disturbed.　　*Judgment affirmed. All the Justices concur.*