No. 7889. FEBRUARY 25, 1931.

*Thomas W. Hardwick* and *W. S. Mann,* for plaintiffs in error.
*S. P. New,* contra.

POWELL *et al.* v. CLEMENTS.

382

No. 7878.   February 26, 1931.

383

*R. M. Penland,* for plaintiffs in error.

*S. B. McCall* and *Branch & Snow,* contra.

ATKINSON, J.  This was a suit to set up an equitable assignment in parol, of an indefinite portion of a fund that might be obtained in the future, by the assignor in a contemplated suit against a third person upon an unliquidated money demand.  It was not a suit at law to obtain a mere money judgment upon a chose in action.  In *Haas* v. *Old National Bank of Evansville,* 91 *Ga.* 307 (18 S. E. 188), it was held:  "A regular customer of a bank in the State of Indiana having consigned goods by railway to a point in Georgia, and taken a bill of lading showing on its face that he was the consignor and another person the consignee, and having drawn a negotiable bill of exchange payable to the cashier of the bank of which he was a customer, the bill being drawn on the consignee of the goods for the purchase-price thereof, and having de-

posited with the bank this bill with the bill of lading attached and procured the bank to enter the amount to his credit under circumstances which would entitle him to draw upon the bank at once for the proceeds; from these facts a jury would be legally authorized to infer that the intention was to make an equitable assignment from the consignor to the bank of the fund representing the price of the goods, and it was not error to refer to the jury the question as to whether such was the intention or not." In the opinion it was said: "According to reason and justice, as well as the spirit of the best authorities on the subject, what transpired in Indiana between the Indiana bank and its customer would amount to an equitable assignment from the latter to the former, if these parties mutually intended that the bank should thereby become substantial and beneficial owner of the particular fund which represented the price of the goods for which the bill of exchange was drawn. There was much more to indicate such an intention than the mere drawing, delivery, and discounting of the bill. Had this been all, no assignment of the fund, legal or equitable, would have resulted. But from this, together with the attachment of the bill of lading and the entry of the amount to the credit of the consignor, he being a regular customer of the bank, and the circumstances being apparently such as that he had a right to draw at once upon the bank for this amount, without waiting for the bill to be collected, it could well be inferred that the intention was to make the bank the substantial owner of the fund, not only from the time it should be realized by collection, but from the time the bill was deposited and credit for it given on the books of the bank to the depositor. Although the bill was not drawn expressly on any particular fund, but was an ordinary negotiable bill of exchange, a consideration of prime importance is that the attachment to it of the bill of lading, the latter specifying a particular consignment of goods, and the former being drawn for the price of these goods, might serve, as matter of evidence, to specialize and identify the particular fund as the one really drawn upon according to the mutual intention of the drawer and the payee. The bill of lading could well be treated as a supplement or appendix restricting and qualifying, equitably though not legally, the general terms of the bill of exchange, and pointing out informally the fund from which the drawee was requested and expected to make payment. Certainly

the drawee would be at no loss to understand what fund was in contemplation. Altogether there was ample evidence to warrant the jury in finding that the intention was to establish a substantial ownership of the fund in the bank, and, consequently, to make to the bank an equitable assignment of that particular fund; and it was not error to refer the question to the jury for determination."

In *Walton* v. *Horkan*, 112 *Ga.* 814 (38 S. E. 105, 81 Am. St. R. 77), it was held: "An order to pay to the person therein named the whole of a particular fund operates, not only as between the drawer and payee, but also with respect to the drawee, as an equitable assignment of that fund to the payee, and the same is effectual even as to money yet to become due by the drawee to the drawer upon the performance of an existing contract." In the opinion it was said that the first question was, "whether or not upon such a state of facts there was an equitable assignment by W. M. Walton to Maurice Walton of the claim of the former upon the Manufacturing Company for the price of the lumber. We think there was. In 2 Am. & Eng. Enc. L (2d ed.) 1055, it is said that: 'To constitute a valid assignment of a chose in action, no particular form of words or form of instrument is necessary. Any language or act which makes an appropriation of a fund amounts to an equitable assignment of that fund.' On pages 1059, 1060, and 1061 of the same volume, we find the following: 'It is a general rule that an order payable out of a particular fund operates as an equitable assignment of the fund, not only as between the drawer and payee, but as regards the drawee also, notwithstanding the order may not be accepted by the latter party. . . In this case it is not essential that the fund assigned should have an actual existence; it is sufficient if it exists potentially. Thus an equitable assignment may as well be made of a fund to come into the hands of the drawee, by virtue of an agency, as of the money actually in hand.' While 'a mere possibility is not assignable' (Id. 1026), 'money to become due upon the performance of an existing contract . . may be assigned in equity.' 'Whatever may have been the law formerly, and however such a transaction may be regarded now in a court of law, it is well settled that in equity an assignment of moneys not yet due or earned, but which are expected to be earned in the future under an existing contract, is binding and will be enforced.' See pages 1027 and 1028, and cases cited under

note 2, beginning on the former. The doctrine laid down in the above-quoted extracts was recognized and applied in our case of *Bank* v. *Hartman Steel Co.*, 87 *Ga.* 435 [13 S. E. 586]. See the authorities there cited, and also *Haas* v. *Bank*, 91 *Ga.* 307 [supra], and note the reasoning of Chief Justice Bleckley in *Jones* v. *Glover*, 93 *Ga.* 484 [21 S. E. 50]. In pointing out why the draft under consideration in that case did not of itself amount to an equitable assignment, he said (page 486) : 'The draft was not drawn expressly on this fund or any other, but purported to be for value received and directed the amount to be charged to account of the drawer.' " The decisions in *Haas* v. *Old National Bank* and *Walton* v. *Horkan*, referred to written instruments by which an entire fund was the subject of the equitable assignment. In the instant case the agreement between the contracting parties was in parol and involved only a portion of the fund that might be collected upon the chose in action specifically referred to in the parol agreement. The substance of the agreement shows an intention to assign a portion of the money already due but yet to be collected, the amount of which was indefinite at the time of the agreement, and would be ascertainable when the services had been rendered by the assignee to the assignor. Although differences in the cases exist, yet under the principles applied in the foregoing decisions, and especially the latter, the agreement involved in the instant case would be sufficient to constitute an equitable assignment if it had been in writing; and having been acted upon by the assignor receiving and the assignee rendering such performance as would bring the parol agreement within the exceptions to the statute of frauds (Civil Code, § 3223), it is sufficient to constitute an equitable assignment, although it is in parol. *Howes* v. *Whipple*, 41 *Ga.* 322. On the general subject see *Fidelity & Deposit Co.* v. *Exchange Bank*, 100 *Ga.* 619 (28 S. E. 393) ; *Reviere* v. *Chambliss*, 120 *Ga.* 714, 716 (48 S. E. 122) ; *Lawson* v. *Lyon*, 136 *Ga.* 214, 220 (71 S. E. 149) ; *Brown* v. *Southern Railway Co.*, 140 *Ga.* 539 (79 S. E. 152). The case differs from *Baer* v. *English*, 84 *Ga.* 403 (11 S. E. 453, 20 Am. St. R. 372), where the alleged assignment was based upon an unaccepted draft that was not drawn upon a particular fund.

The second and third headnotes do not require elaboration.

*Judgment affirmed. All the Justices concur.*