28844. GREAT AMERICAN INDEMNITY COMPANY *v.* JEFFRIES, ordinary, for use, etc.

Decided July 28, 1941.

*T. J. Long,* for plaintiff in error.

*Kobak & Levy, Joseph M. Buffington,* contra.

Felton, J. ▮ This is an action seeking recovery against the plaintiff in error, surety on an administratrix's bond, because of a devastavit committed by the administratrix. The sole defense was that the surety had been discharged from the bond by order of the ordinary before the devastavit occurred. The reply was that the

judgment which purported to discharge the surety was ineffective. The trial court so held, and that ruling is now before us on review. The case may be said to involve a collateral attack on the judgment mentioned. There has been no direct proceeding to set it aside. On November 28, 1932, Lela Speer was appointed administratrix of the estate of Lovett Speer, and her bond, on which Great American Indemnity Company appeared as surety, was duly approved and filed. On January 16, 1933, the administratrix filed in the court of ordinary a petition in which she alleged that the bond was a "joint-control bond in which a representative of the company must sign jointly checks with the administratrix. . . There have arisen differences between the administratrix and representatives of the bonding company as to the distribution of the estate. . . The administratrix can better administer the estate if the present bondsman is relieved and another satisfactory bond executed." The prayer was that "an order be issued relieving the Great American Indemnity Company from further liability on its bond if and when petitioner presents to the said court a satisfactory bond with another person as security." No citation, rule nisi, or any kind of notice appears in the record. There is nothing to show that the surety was served or voluntarily appeared before the court. On the day the petition was filed, January 16, the following order was entered: "Fulton Court of Ordinary: The foregoing petition read and considered and ordered filed; and it is hereby ordered that Great American Indemnity Company be relieved of further liability on its bond as security for Lela Speer, administratrix of the estate of Lovett Speer, except in so far as liability has heretofore accrued as the results of payments heretofore made, when the said administratrix presents to this court satisfactory bond which is approved by this court. This 16 day of Jany., 1933. [Signed] Thos. H. Jeffries, Ordinary." On January 17 the administratrix executed a new bond with one Williams as surety. This bond was approved and filed.

On November 8, 1939, certain heirs of the estate filed a petition seeking to require the administratrix to make an accounting. In response, the administratrix filed a final return to which the heirs filed objections. At a hearing the finding was against the administratrix, the final return was disallowed, the caveat sustained, $1585.09 with interest was found to be due the distributees, and the admin-

istratrix was ordered "to pay forthwith to the distributees of said estate their respective pro rata shares or interest therein." An execution issued on this judgment, and sometime later an entry of nulla bona was made on the execution. Thereafter the instant action was instituted by Thomas H. Jeffries, suing for the use of the designated heirs, to recover of the Great American Indemnity Company the principal and interest due on the execution above mentioned. It is conceded that the acts of the administratrix which resulted in the execution against her occurred after the entry of the order on January 16, 1933, purporting to discharge the Great American Indemnity Company from further liability when a new bond should be approved, and after the approval of the new bond on the following day. One question presented is whether said order of January 16 was effective to relieve the company from liability on account of the acts of the administratrix committed thereafter. Every administrator is required to give a bond, and the paper, when executed, approved and filed, becomes a contract. While the nominal obligee stated is the ordinary (Code, § 113-1217), it is given "for the benefit of all concerned," and the real beneficiaries are the heirs and creditors of the estate. Under the contract the agreement of the surety is, simply, that if the administrator fails in his duty, and loss to an heir or creditor results, the surety will make it good. When the bond is completed the beneficiaries become vested with definite rights in it; they are entitled to have it enforced according to its terms; and neither the administrator nor the surety, together or separately, can make any change in it, even with the approval of the ordinary, unless that change is effected through some proceeding specifically authorized by statute. This appears to be the rule recognized in practically all jurisdictions where the question has arisen. Unless a contrary provision appears in the bond itself, the surety is bound by his agreement to see the administration through to the end, and this obligation can not be terminated earlier except in a way for which provision has been made by statute. It is also true that in every case, if alteration under statutory authority is desired, the statutory procedure must be strictly followed.

In Georgia the rules applicable to administrators' bonds where the surety "dies, or becomes insolvent, or removes from the State, or from other cause becomes insufficient, or in case the surety de-

sires to be released as surety" are the same as the rules applicable to bonds of guardians. Code, § 113-1222. Under § 49-116, if a surety "shall die, become insolvent, or remove from this State, or if from other cause the security shall become insufficient, the ordinary may, of his own motion or at the instance of any relative of the ward, require the guardian to give other and sufficient security." When this is done the second bond is cumulative of the first, and the new sureties become co-sureties with those on the first bond. *Remington* v. *Hopson,* 137 *Ga.* 95 (72 S. E. 918). Under § 49-239, when a guardian removes to another county he is required to give a new bond, and when this is done and the other requirements are fulfilled, the trust becomes removed to the new county, and the sureties on the original bond are responsible only for past misconduct. Under § 49-233, the *surety* is permitted, under specifically stated circumstances, to apply for discharge from future liability, and on proper showing may obtain a judgment to this effect; also, under this section, if a surety dies his representative may apply for an order discharging him from future liability. The two sections last cited contain the only provisions we have which relate to the termination of a surety's obligation before the ending of the trust, and the substitution of a new surety in lieu of the first one. It is clear from a reading of all three of the sections that the proceeding under § 49-116 can be instituted only by the ordinary, whereas the proceeding under § 49-233 can be instituted only by the *surety himself,* or, if he be dead, by his representative.

It is true that the court of ordinary is a court of general jurisdiction, and that under the Code, § 24-1901(8), this jurisdiction extends to "the discharge of former, and the requiring of new surety, from administrators and guardians;" but this general statement must be read with the sections above cited, and can not be held to authorize action in a proceeding not provided for by statute. The sections cited are exhaustive of the subject. Unless a given procedure falls within the terms of one or the other, it must necessarily be abortive, and it follows that the proceeding involved in the case at bar, having been instituted *by the administratrix* was without any authority under the common law or our statutory provisions, and the court of ordinary had no power to entertain it. Although it is not essential, it may be added that the reason given by the administratrix in the application now before us for desiring

the change was a purely personal one. No danger of injury or loss to the estate was presented; it did not appear that the ordinary, the surety, or any of the beneficiaries were dissatisfied with the existing situation; the administratrix was displeased because of differences which had arisen between her and the representatives of the bonding company, very evidently, according to her own statement, because those representatives were requiring that checks on estate funds should be signed by one of them jointly with the administratrix. As indicated, the substance of the complaint of the administratrix against the surety is not of importance here, as we are now dealing with a matter of jurisdiction, but even if it were it would be found on examination to be altogether without the field of statutory provisions. These provisions exist for the sole purpose of protection of those who are entitled to be protected, and in no one of them is it hinted that an administratrix, even with the approval of the ordinary, can get rid of a surety merely because she objects to one of the safeguards he has set up as a protection to the beneficiaries. Referring again to the Code, § 24-1901(8), it is not always true that because a court is vested with general jurisdiction over a stated subject-matter the forum is open to all would-be litigants who desire to institute actions involving that subject-matter. As an illustration, we may consider the situation presented in matters of divorce. The superior court has general jurisdiction of actions of divorce, but not every spouse who desires a dissolution of the marriage and who has adequate ground therefor may invoke the court's power to that end. The forum is open only to those plaintiffs who have been bona fide residents of the State for twelve months before the filing of the action. Code, § 30-107.

"We have seen that the requirements of our statute, and especially those which are jurisdictional, must be strictly and literally complied with. Non-compliance with such of these requirements as are not jurisdictional can be taken advantage of before judgment, but does not render the judgment void. Compliance with those requirements which are jurisdictional must be had before judgment. Failure to comply with such requirements before judgment renders the judgment void." *Millis* v. *Millis,* 165 *Ga.* 233, 241 (140 S. E. 503). "One filing a petition for divorce must allege and prove that he has been a bona fide resident of the State

for the length of time required by law." *Dicks* v. *Dicks*, 177 *Ga.* 379, 382 (170 S. E. 245). "This being a divorce suit in which the defendant was a non-resident of the State, and jurisdiction of the court depending on residence in this State of the plaintiff, the parties by plea or otherwise could not waive the jurisdiction so as to dispense with proof in the court that the plaintiff had been a bona fide resident of this State for twelve months before the suit was filed." *Bellamy* v. *Bellamy*, 187 *Ga.* 56 (199 S. E. 745).

Although the court of ordinary has general jurisdiction over the discharge of existing sureties on administrators' bonds and the substitution of new sureties, no one has the right to invoke that jurisdiction except those who are specifically authorized by statute to do so. Our conclusion is that when the surety in the case at bar retired from the situation, and paid no further attention to it after the order of January 16, 1933, was entered, it did so at its own risk. The surety is presumed to know the law and is bound by it. The order referred to and the approval of the substituted bond did not release the plaintiff in error from liability in connection with the administratrix's breach of duty.

In the absence of Georgia decisions we now call attention to some cases from other jurisdictions which state the principles we consider applicable to the case at bar. Bookhart v. Younglove, 207 Iowa, 800 (218 N. W. 533): "The release of a surety on the bond of an executor or administrator is a nullity unless made in strict compliance with the statute governing such release. So held where the release was entered on the ex parte application of the executor instead of the surety." In the decision it is stated: "The object of a bond is security to those who are interested in the property settlement of the estate. The law requires the bond for their protection, and the parties interested acquire a vested interest in the bond, which can not be divested without their consent, except in the manner prescribed by law. The bond signed by the surety company was executed in pursuance of the statutory requirements and in obedience to the order of the court. In the absence of statute, the court is without authority to discharge or release a surety, except with the consent of the parties interested. 24 C. J. 1073 [citing a number of cases]. It is generally held by the courts that, where the legislature has provided a statute authorizing the release of sureties, its provisions must be strictly complied with, in order

that the release may be effective [citing]. 'The courts have no power to waive compliance with the statute, but the surety, in seeking to avail himself of its benefits, must comply with its provisions. . . The proceeding to release sureties is statutory and of a summary character, requiring no notice to the parties ultimately entitled to the fund, and the statute can not be extended by construction to authorize the discharge of a surety on the application of the principal in the bond, in the absence of any provision in the statute authorizing it.' Clark v. American Surety Co., supra [171 Ill. 235, 48 N. E. 481]. The courts generally declare that where the statute provides that the surety may apply for the release, or contemplates that the initial step for obtaining release must be taken by the surety, the proceeding asking for his discharge must be on his petition. . . It will be observed that, in the instant case, there was no attempt to comply with the statutory authority, there being nothing of record to show the election of the surety company to be released from liability, and no notice served, as required by the aforesaid statutory law. Therefore, the court was without jurisdiction, if acting under statutory authority, to enter the order of discharge of the surety company on February 21, 1921. While it is true that there may be a valid release of sureties on a bond as to interested parties consenting to the order of discharge, yet there can be no valid order of discharge of a surety by the court without strictly complying with the statutory authority, or without the appearances by the interested parties and their giving their consent to the order of discharge. The record of the probate court as to the order of February 21, 1921, fails to show any such appearance and consent by the interested parties. Said order was a mere ex parte order, granted on the application of the executor, without jurisdiction, and is a mere nullity; and the liability of the surety company was in no way affected thereby."

The facts in the Bookhart case were practically identical with those now before us. The application for release of the surety on the first bond and for permission to file a new bond with new sureties was made by the executor, and the court, on the same day, without service of notice on any one (exactly as in the case at bar), entered an order that the original bond signed by the surety company be released, the company discharged, and that the new bond be substituted therefor. See Wood v. Williams, 61 Mo. 63; Rush

*v.* State ex rel Bixler, 19 Ind. App. 523 (49 N. E. 839); Hickerson *v.* Price, 59 Tenn. 623; Taylor *v.* Taylor, 66 W. Va. 238 (66 S. E. 690); Clark *v.* American Surety Co., supra; Brehm *v.* United States Fidelity & Guaranty Co., 124 Wis. 339 (102 N. W. 36); Ætna Accident & Liability Co. *v.* Langley, 68 Okla. 283 (174 Pac. 1046); Myers *v.* Pennsylvania R. Co., 245 Pa. 534 (91 Atl. 919); People *v.* Brown, 23 Colo. 425 (48 Pac. 661); People *v.* Curry, 59 Ill. 35; Jones *v.* Hays, 38 N. C. 502 (44 Am. D. 78); Kasper *v.* People, 230 Ill. 342 (82 N. E. 816); Jones *v.* Ritter, 56 Ala. 270; Rice *v.* Wilson, 129 Mich. 520 (89 N. W. 336); Southern Surety Co. *v.* Cole, 106 Kan. 782 (189 Pac. 957); Brandt on Suretyship and Guaranty, 1256, 1257. On examination of the above cases it will be found that the great weight of authority establishes the following propositions: such proceedings as are now under consideration are purely statutory, and the terms of the statute must be strictly followed in every instance; one may not move the court to discharge a surety on an administrator's bond unless he is specifically authorized by the statute to make the application; if a proceeding is instituted by one not authorized to do so it is without effect and no valid judgment can be entered thereon; the law's object in requiring an administrator's bond is the protection of those who have rights in the decedent's estate, they are the "persons interested" in the bond, and once the bond is given their interests therein can not be divested without their consent except in some manner expressly provided for by statute; the bond is held in trust for all such "persons interested," and the court has no power to do anything which affects their vested rights unless such power has been created by statute or unless they all consent; the principal and the surety can not by agreement between themselves, even with the approval of the court, release the surety.

The surety contends that Code, § 24-1901 (8), gives the ordinary carte blanche authority over the release of sureties. In the absence of language indicating that the codifiers intended to codify a rule different from the law existing at the time of the adoption of the Code it will be presumed that the intention of the legislature was to state the law as it was at the time of the adoption. We have been able to find only one case indicative of what the English law was on the question, and it was there held that there was no authority in the court to release a surety on his own appli-

cation. In Goods of Stark, L. R. I. 76, Eng. 1866. Nearly all the decisions of foreign jurisdictions on the subject assume that the probate court has no inherent power to release a surety, and hold that the power is purely of statutory origin. Section 24-1901 is therefore only a codification of the laws then existing through statute, cited herein, authorizing the release of a surety under conditions therein stated.

So far as we have been able to ascertain the question now before us has never been decided by an appellate court of Georgia, but there is certainly no expression in any Georgia decision which we have examined which indicates a view contrary to the conclusion we have reached. *Dupont* v. *Mayo*, 56 *Ga.* 304 is cited by counsel. In this case a guardian's bond had been given which the ordinary deemed insufficient; he therefore required an additional bond. This was given. Later, the ordinary entered an order reciting that it being considered that the first bond was insufficient and "the unwillingness of said Smith [one of the sureties on the first bond] to continue as such security, insufficient in security, and it further appearing that" the guardian had since executed two bonds, one "with said Mathews and said George W. Mayo, as sureties, to take the place, and as a substitute of the first bond given by J. W. Mayo, Mathews and Smith," it was ordered that Smith be discharged from all liability. The validity of this discharge was questioned. The court through Judge Bleckley stated: "The surety on a guardian's bond becomes bound by a contract in which the infant ward has an interest. That contract remains valid and binding until it is dissolved in the manner prescribed by law. . . We think it is clear that the surety must *sue* for his discharge, and that the ordinary must therefore issue process; that is, cite the guardian to appear and show cause against the application. The proceeding is one between party and party; for the ordinary, after these steps are taken, is required to hear the *parties* and their evidence. The ward is not represented otherwise than by the guardian, and the guardian is to be *heard* by the ordinary—heard no less for the ward's benefit than for his own. The ward has no other hearing in the matter, and as the law provides for a hearing in a certain way, unless the hearing is had in that way, the ward is not heard at all. For a judgment which affects the ward to be valid, the guardian must be brought into court by legal means."

Attention was then called to the fact that there had been no proceeding filed; nothing, it appeared, had happened except the entry of the judgment. The court proceeded: "The law requires petition, process, trial and judgment. Not one of these is shown except the last. . . The order of discharge is not without recitals, but what it does recite indicates rather a consent arrangement than any regular proceeding." The discharge was held invalid. While in the discussion of the case stress is laid on the absence of any written application by any one to secure the discharge, and the decision is rested mainly on that point, the proposition involved in the case at bar, that even if there had been a written application the court would have had no power to entertain it unless it was filed by some one authorized by statute to present it, was not touched on.

We have carefully considered all the cases cited by counsel for the plaintiff in error, and no one of them appears to us in the least opposed to the conclusion we have reached. We are of the opinion that the trial judge was correct in concluding that the judgment in question was not effective to discharge the plaintiff in error from liability for illegal acts of the administratrix committed after the date of that judgment and the filing and approval of the new bond.

■ A finding against the surety in a suit against the surety alone will not be set aside on appeal, where, under the facts in this case, it did not appear that a judgment had been obtained against the administratrix individually, nor that she had absconded, nor that she was dead and her estate was unrepresented, nor that she was in such a position that an attachment might be issued against her, when the question of the nonjoinder of the administratrix was not raised in the trial court and the general grounds of the motion for new trial were abandoned. *Ray* v. *Pittman,* 119 *Ga.* 678 (46 S. E. 849) ; *Hunt* v. *Doyal,* 128 *Ga.* 416 (57 S. E. 489) ; *Lawson* v. *Lyon,* 136 *Ga.* 214 (71 S. E. 149) ; *Burkhalter* v. *Peoples Bank,* 175 *Ga.* 744 (165 S. E. 749) ; *Greenwood* v. *Starr,* 174 *Ga.* 503 (163 S. E. 500).

■ There is no merit in the contention of the first surety that the heirs should have exhausted their remedies against the second surety before pursuing them against it. Both sureties were bound under their respective bonds, and the question of contribution is

between them and is of no concern to the heirs. The court did not err in overruling the motion for new trial.

*Judgment affirmed. Stephens, P. J., and Sutton, J., concur.*