A00A0476. FOWLER et al. v. SMITH et al.
(533 SE2d 739)

BLACKBURN, Presiding Judge.

In this second appearance of this case before us, Glenda Fay Fowler and Steve Anthony Smith, beneficiaries of the estates of Troy Alonzo Smith and Ethel J. Smith (collectively the Estate), appeal the trial court's grant of summary judgment to James Don Smith, the administrator of the Estate (the Administrator), and St. Paul Fire & Marine Insurance Company,[1] the bonding company used by the Administrator to procure a bond. Specifically, the appellants contend that the trial court erred by finding that, following an unsuccessful claim for estate mismanagement brought by them against the Administrator and St. Paul, the litigation costs incurred by St. Paul, pursuant to an indemnity clause in the bond application of the Administrator, should be paid from Estate assets. For the reasons set forth below, we affirm.

In the first appearance of this case, *Fowler v. Smith,* 230 Ga. App. 817 (498 SE2d 130) (1998), this Court upheld a jury verdict in

---

[1] St. Paul is the predecessor in interest to United States Fidelity & Guaranty Company, the original issuer of the bond.

favor of the Administrator and St. Paul regarding claims of misman-agement brought by appellants. Following this decision, the Adminis-trator petitioned the Probate Court of Whitfield County to allow him to use Estate funds to pay the costs of litigation incurred by St. Paul, for which he was contractually liable pursuant to an indemnity clause contained in his bond application. The probate court approved these disbursements, and the appellants then appealed this ruling to the Superior Court of Whitfield County. The superior court, in turn, approved the disbursement, finding that St. Paul's expenses, for which the Administrator was liable, were expenses incurred in the administration of the Estate in accordance with OCGA § 53-6-61. It is this determination which the appellants now contend was errone-ous based on several grounds.

1. Despite the fact that the probate court approved the actual bond between the Administrator and St. Paul in accordance with OCGA § 53-7-30, appellants contend that the superior court erred in enforcing the indemnity provisions of the bond application because that application was not also approved. Appellants argue that, because the application was not approved, its terms must be consid-ered void. We disagree.

OCGA § 53-7-30 (a) does not require probate court approval of an administrator's bond application. It provides:

> Every administrator, except an administrator with the will annexed, shall upon his qualification give bond, with good and sufficient security, to be judged by the judge of the pro-bate court, in a sum equal to double the amount of the estate to be administered. The bond shall be payable to the judge for the benefit of all concerned, shall be attested by him or his clerk, and shall be conditioned for the faithful discharge of the administrator's duty as such, as required by law. A substantial compliance with these requisites for the bond shall be deemed sufficient; and no administrator's bond shall be declared invalid by reason of any variation there-from as to payee, amount, or condition, where the manifest intention was to give bond as administrator and a breach of his duty as such has been proved.

Therefore, contrary to appellants' assertions, nothing in this statute voids the bond application simply because there is no evidence that it was approved by the probate court.

Moreover, in this case, the bond application ultimately was approved, at least implicitly, by the probate court when it deter-mined that the indemnity provision was enforceable. By finding that the fees incurred by St. Paul were owed by the Administrator as part

of his administration of the Estate, the probate court ratified the terms of the bond application.

*Great American Indem. Co. v. Jeffries*, 65 Ga. App. 686 (16 SE2d 135) (1941) does not support appellants' argument that the failure to receive probate court approval voided the terms of the bond application. In *Jeffries*, we held that a surety cannot be released from its obligation under a bond unless it has properly availed itself of the statutory authority to do so. We explained:

> Under the contract the agreement of the surety is, simply, that if the administrator fails in his duty, and loss to an heir or creditor results, the surety will make it good. When the bond is completed the beneficiaries become vested with definite rights in it; they are entitled to have it enforced according to its terms; and neither the administrator nor the surety, together or separately, can make any change in it, even with the approval of the ordinary, unless that change is effected through some proceeding specifically authorized by statute. . . . Unless a contrary provision appears in the bond itself, the surety is bound by his agreement to see the administration through to the end, and this obligation can not be terminated earlier except in a way for which provision has been made by statute.

Id. at 688.

Thus, *Jeffries* stands for the proposition that a surety cannot completely back out of its obligations as a surety without going through appropriate statutory procedures, unless the face of the bond says otherwise. It does not provide, as appellants contend, that any provision not on the face of the bond, itself, is void.

Furthermore, OCGA § 53-6-61 provides: "Personal representatives shall be allowed reasonable expenses incurred in the administration of the estate, including without limitation expenses for travel, *the expenses and premiums incurred in securing a bond,* and the expenses of counsel and other agents." (Emphasis supplied.) Statutory authority, therefore, clearly contemplates that an administrator will be allowed reasonable expenses related to the procurement of an administrator's bond. In this case, the Administrator became subject to certain expenses related to his bond, namely St. Paul's litigation costs, due to actions by the heirs of the Estate. Such an expense falls within the scope of OCGA § 53-6-61 as a necessary cost of administration.

2. Appellants contend, in the alternative, that even if the indemnity provision of the bond application is enforceable, the litigation costs incurred by St. Paul were voluntary and, therefore, not subject

to reimbursement. Appellants argue that St. Paul's liability depended on the Administrator's liability, that the Administrator hired counsel to represent him, and that St. Paul could have relied on the Administrator's counsel to protect its interests. Appellants then conclude that St. Paul's separate counsel was superfluous and therefore a voluntary expense.

This reasoning, however, is faulty, and it overlooks the ethical responsibilities of the lawyer-client relationship and the statutory procedures regarding litigation against an administrator's surety.

As an initial matter, appellants fail to consider the fact that the attorney for the Administrator is ethically bound to consider only his client's interests, not those of St. Paul. He was not at liberty to balance the interests of the Administrator and St. Paul as well. Therefore, to ensure that its interests were fully protected from its standpoint as a bonding company, not as an estate administrator, St. Paul had to seek its own representation.

Furthermore, OCGA § 53-7-39 provides: "The administrator or executor and his sureties shall be held and deemed joint and several obligors and may be subjected jointly and severally to liability in the same action." In other words, the appellants, in their initial litigation against the Estate, could have sought recompense solely from the bonding company if they had been successful. Under these circumstances, St. Paul was entitled to retain counsel to protect its interests.

3. Finally, relying on principles of insurance law, the appellants argue that allowing payment of the bonding company's litigation costs from the Estate is tantamount to allowing an insurance company to subrogate against its insured. Appellants' analogy does not apply to the facts of this case. By asking that the Administrator be required to post bond, the appellants initiated the process which resulted in the bonding expense being incurred. The bond expense constituted a portion of the expense sought to be reimbursed, of which appellants complain. The subject litigation expense resulted from appellants' election to sue both the Administrator and St. Paul and were increased by protracted appeals. The appellants have cited no appropriate authority supporting denial of the subject claims.

Moreover, public policy does not support the appellants' arguments. If appellants' contentions prevailed, an administrator wrongly sued by heirs could be personally liable to a bonding company also wrongly sued by the heirs. In essence, an administrator could be punished even though he correctly performed his duty. Such a possibility would result in fewer individuals being willing to serve as administrators and fewer bonding companies willing to issue bonds, with a resulting pressure to increase the costs connected therewith. Public policy and common sense require that the appel-

lants' arguments in this case be rejected.

*Judgment affirmed. Eldridge and Barnes, JJ., concur.*

DECIDED APRIL 12, 2000.

*David J. Blevins,* for appellants.

*Porter & Barrett, J. Alexander Porter, Charles L. Day,* for appellees.